ANTHONY KRAUT, a Minor, by Natalie Bartusiewicz, his Next Friend, Plaintiff-Appellant and Cross-Appellee, *v.* EDWARD J. RACHFORD, Defendant-Appellee and Cross-Appellant.

First District (5th Division)    No. 76-578

Opinion filed July 22, 1977.

208

Kenneth Kandaras, of Chicago, for appellant.

Klein, Thorpe, Kasson & Jenkins, of Chicago (Newell N. Jenkins and Bruce C. Mackey, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

In this action, brought on behalf of the minor plaintiff by his aunt as next friend against a number of defendants, the verified complaint alleges that his right to due process was violated when he was dropped from the enrollment of Homewood-Flossmoor Community High School (H-F). Injunctive relief and damages, actual and punitive, were sought. The trial court granted two motions for summary judgment—one of defendant Rachford and the other of the remaining defendants. Plaintiff appeals only from the judgment in favor of Rachford (hereafter called defendant). The court also granted plaintiff's request for injunctive relief by ordering that he be enrolled as a tuition-free student at H-F, and defendant cross-appealed from this order.

It appears that plaintiff, his parents, brother, and sister lived in Milwaukee, Wisconsin, until his father lost his job. Upon the family's arrival in the community of Flossmoor, Illinois, financial problems necessitated that the children reside with their aunt, Natalie Bartusiewicz, while their parents lived next door with an uncle. In October, 1967, plaintiff's parents were divorced and custody of the children was awarded to their mother, who later moved to an apartment in the community of Chicago Heights. However, she did not take the children with her, because she was unemployed and was receiving no support

payments from her ex-husband who had left the State. Although she received Aid for Dependent Children payments of $105 monthly, she testified that she could not adequately support her children without the assistance of her relatives. Consequently, Mrs. Bartusiewicz, who was a widow, kept the children and she and one of plaintiff's uncles contributed to their financial support.

For awhile, the children lived with their mother on a part-time basis after she remarried in March 1969, but her second husband expressed a desire that the children live with their aunt. Plaintiff's mother testified that she was dissatisfied with his attitude toward the children, because he avoided establishing a father-son relationship with them and frequently criticized their appearance and mannerisms. He would not contribute to their support, and their care was left to her and Mrs. Bartusiewicz. At this time, plaintiff's mother was employed as a secretary at Bloom Township High School (Bloom), which was located in the school district of her residence.

Mrs. Bartusiewicz testified that she welcomed the children's living with her on a full-time basis, commencing in 1969, as she was lonely and wanted to raise and supervise them. Their meals, laundry, and day-to-day supervision was provided by her and she supported them to the extent of her resources; i.e., by maintaining a home for them and providing a portion of their food expense. Their mother contributed the remainder of their support and took her evening meal with them at Mrs. Bartusiewicz's home, during which their discipline was discussed.

Plaintiff had attended a parochial elementary school, which institution listed his address as that of his mother in the Bloom rather than the H-F attendance district. While still in the eighth grade, a personal information form provided by H-F to assist freshman enrollment for the 1973-74 school year was completed, in which his address was given as that of his aunt in Flossmoor. The form was signed by both his mother and his aunt. His H-F enrollment form for that same year also bore both of their signatures, with an accompanying statement that Mrs. Bartusiewicz was his guardian. He was enrolled in and attended H-F during the 1973-74 school year.

Late in his freshman year, H-F processed his enrollment form for the 1974-75 school year over his nonresident mother's signature rather than that of his resident aunt and, on August 1, 1974, H-F accepted the payment of his fees for the sophomore year—which was designated by a H-F form to be the step necessary to commence final registration.

Thereafter, on or about August 30, 1974, it appears that defendant received a telephone call from a person who was a nonresident of the H-F district, requesting the enrollment of her children on a tuition-free basis. When told that this could not be done, she informed defendant that

plaintiff lived with his mother in Chicago Heights and yet was allowed to attend H-F on a resident basis. Defendant then examined plaintiff's records, which failed to show either that he lived with his parents in the H-F attendance district or that he dwelled with a resident guardian. On August 30, 1974, defendant notified plaintiff's mother that "he had reason to believe" that plaintiff was not a legal resident of the H-F attendance district and, as a result, he had been dropped from the enrollment of H-F but that she could have the matter reviewed by contacting Mr. Fabian, Director of Student Services. The next day, she protested this action in a telephone conversation but later met with Fabian following which she completed a questionnaire given to her by Fabian. Her responses stated that plaintiff lived with his aunt on a full-time basis because of family problems—among other reasons; that he would continue to reside there as long as doing so was in his best interests; that his aunt supports him to the extent of her resources; that in event of accident or other emergency, it is his aunt who was to be notified; and that although his aunt is responsible for his discipline, due to financial considerations she (his mother) assumed responsibility for damages caused by him. On September 16, 1974, Fabian forwarded the questionnaire to defendant with an attached memo, inquiring as to what criteria should be employed to ascertain the veracity of the responses of plaintiff's mother. On September 18, 1974, defendant gave his opinion that plaintiff was living with his aunt for the express purpose of attending H-F and thus was not a legal resident of the district. In letters to Anthony's mother and aunt on September 24 and 26, defendant informed them of the grounds upon which he had based his opinion.

Plaintiff then was enrolled in Bloom Township High School and attended his sophomore year there, tuition-free. On July 3, 1975, the trial court found him to be a resident of Flossmoor and ordered defendant to enroll him in H-F as a tuition-free student. On oral argument, we were informed that he was so enrolled and has since been graduated by H-F.

OPINION

■■■ Plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment. It is his position that a question of material fact exists concerning the issue of whether his right to due process had been violated, in which event he asserts that he is entitled to damages. The parties agree that the question of damages is governed by *Wood v. Strickland* (1975), 420 U.S. 308, 43 L. Ed. 2d 214, 95 S. Ct. 992, and, since there is no claim of malice in the instant case, that punitive damages could not be recovered. But compensatory damages may be obtained where school officials have discharged their duties with such disregard for the student's clearly established constitutional rights that

their actions cannot reasonably be characterized as being in good faith. Initially, we note that the deprivation of a right or interest is protected by the requirements of due process only where the nature of the interest is one of liberty or property. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.) However, the term "property" is broad enough to offer protection to an objective expectancy of the continuance of an interest which has been initially conferred by the State. (*Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694.) Whether such an expectancy may be characterized as a "legitimate claim of entitlement" denoting objectivity, rather than an "abstract desire or need" denoting subjectivity, depends on the statutory terms creating the interest as well as the rules or policies by which it is administered. 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.

■■ The Illinois School Code provides that a board of education must establish free schools sufficient to accommodate persons within the district between the ages of 6 and 21 years (Ill. Rev. Stat. 1973, ch. 122, par. 10—20.12) and to charge tuition to pupils who are non-residents of the district (Ill. Rev. Stat. 1973, ch. 122, par. 10—20.12a). Children presumptively reside in the district where their parents reside; however, for school purposes, this presumption may be rebutted by circumstances showing a different residence. (*Turner v. Board of Education* (1973), 54 Ill. 2d 68, 294 N.E.2d 264.) *Turner* cited *Dean v. Board of Education* (1944), 386 Ill. 156, 53 N.E.2d 875, *Ashley v. Board of Education* (1916), 275 Ill. 274, 114 N.E. 20, *Board of Education v. McCaskill* (1918), 212 Ill. App. 138, and *People ex rel. Saxe v. Board of Education* (1917), 206 Ill. App. 381, which illustrate a panoply of such circumstances. *Dean* involved the residency of a child who, with the consent of his father, was ordered by the juvenile court into the custody of the Illinois Children's Home & Aid Society, which in turn placed him in a private home where he would be maintained and supported for a stated compensation. The compensation was paid in part by the father, who resided in a school district different than that of the placement home. The supreme court held that the location of the placement home was the child's residence for school purposes. In *Ashley*, the residency of children who had been voluntarily placed in an orphanage was questioned where some had one or more parents living in another district. The supreme court noted that neither the boarding of a child in another district nor the setting up of a temporary residency in another district for the purpose of attending school there on a tuition-free basis will, ipso facto, alter the child's residency. It was held that for school purposes the child's residence is located in the district where he dwells in circumstances such as the following: he is adopted, he is placed permanently with a family with no intention of withdrawal, his parents have relinquished all control, his

parent or guardian lives in another state and exercises no control over him, or his family has no permanent abode but travels incessantly in search of work. In holding that the children's residence was the site of the orphanage, the *Ashley* court reasoned that the children were actually residents of the district in the ordinary and popular meaning of the term, as they had no other home, that they were placed in the home for maintenance and rearing by those who had custody of them, that there was no present intention by anyone in authority or control of the minors to relocate them, and that where broken homes and financial difficulties occur, it is frequently necessary to find a separate residence for the children. *McCaskill* held that children who temporarily reside with a relative during the school year but otherwise reside with their parents in another district could not be classified as tuition-free students. *Saxe* involved the residency of a child sent to another school district to live with his grandmother. The court reasoned that such a child was a nonresident of the school district if he was living away from his parents for the primary purpose of attending school on a tuition-free basis. The child in *Saxe* was held to be a resident of the school district, as it was established that his care and custody had been transferred to his grandmother and that he resided with her on a full-time, indefinite basis. In *Turner*, the care and custody of the child had been transferred by order of court to a relative who was a resident of the school district, but because the guardianship had been sought so that the child could attend school on a tuition-free basis, it was held that her residence for school purposes remained with her parents.

■■■ Here, it cannot be questioned that the Illinois School Code conferred upon plaintiff an interest in attending *a* school on a tuition-free basis and that the retention of such a benefit is protected by the requirements of due process of law. The question remains, however, whether this protection is to be afforded his interest in remaining in H-F on a tuition-free basis. He had attended H-F during the 1973-74 school year as a tuition-free student, although one of his freshman enrollment forms indicated that he may not have been a resident of its attendance district since he lived with his aunt within the district rather than with his mother who resided in an adjacent school district. H-F processed his course enrollment form for the 1974-75 school year over his nonresident mother's signature rather than that of his resident aunt on March 18, 1974, and on August 1, 1974, it accepted the payment of his fees for his sophomore year. No further communication was received from H-F until August 30, 1974, when defendant notified plaintiff that he was dropped from enrollment. Under these circumstances, we believe that the actions of H-F in allowing him to attend on a tuition-free basis during his freshman year and further allowing him to proceed to final registration

for his sophomore year, which encompassed a time period during which his living conditions remained constant, fostered an objective expectancy in his continuation at H-F on the same basis as before. (*Perry; Roth.*) Therefore, we hold that plaintiff was entitled to due process protection of his interest in continuing to attend H-F as a resident student. We must next consider what process was due him.

" '[D]ue process' cannot be imprisoned within the treacherous limits of any formula," but some real opportunity to protect the interest involved must be afforded. (*Joint Anti-Fascist Refugee Committee v. McGrath* (1951), 341 U.S. 123, 162, 95 L. Ed. 817, 849, 71 S. Ct. 624, 643 (Frankfurter, J., concurring).) At a minimum, however, where a proceeding is to be accorded finality, notice must be given and an opportunity to be heard afforded which will be meaningful and appropriate under the circumstances. (*Armstrong v. Manzo* (1965), 380 U.S. 545, 14 L. Ed. 2d 62, 85 S. Ct. 1187; *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652.) Moreover, where the interests of a minor student are involved, his parents should be notified of the pending action. *Linwood v. Board of Education* (7th Cir. 1972), 463 F.2d 763, *cert. denied* (1972), 409 U.S. 1027, 34 L. Ed. 2d 320, 93 S. Ct. 475.

In the instant case, plaintiff's mother was notified on August 30, 1974, that defendant had reason to believe plaintiff was not a legal resident of the school district and, as a result, was being dropped from the school rolls but that a review of the matter could be had by contacting the Director of Student Services. Plaintiff argues that this notice was improper, because it was not given before he was dropped and because it did not advise him of the charge or charges made by the anonymous caller. We disagree.

Cases where drivers licenses are to be revoked (*Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586), welfare benefits to be terminated (*Goldberg v. Kelly* (1970), 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011), or students to be expelled from public school for misconduct (*Betts v. Board of Education* (7th Cir. 1972), 466 F.2d 629; *Linwood; Whitfield v. Simpson* (E.D. Ill. 1970), 312 F. Supp. 889) have required notice and an opportunity to be heard prior to the time of revocation, termination, or expulsion; however, we find them inapposite because they involved persons who, while awaiting final determinations, suffered a deprivation of the previously conferred interests. Here, plaintiff's interest in attending *a* school on a tuition-free basis would have been deprived only if, when dropped from the H-F rolls, he was also denied the opportunity to attend a school located within the attendance district of his parent's residence on a tuition-free basis. He was not so deprived, as he was in fact admitted to that school (Bloom) as a tuition-free student for

the 1974-75 year and, of course, he was enrolled in H-F on the same basis, by order of court, for the remainder of his high school education.

■■ As regards his objective expectancy of continuing at H-F as a tuition-free student, it appears that when plaintiff's mother was notified on August 30, 1974, that plaintiff was being dropped, additional information beyond that in his school records was required to fairly determine his actual residence for school purposes. While this was being obtained, defendant's dual responsibility of providing a free education to residents and charging tuition to nonresidents necessitated that plaintiff's parent be notified that plaintiff would either be permitted to stay at H-F at the risk of a tuition charge, if the ultimate residence decision went against him, or be dropped from enrollment so that he could enroll at the free school in the district of his parent's residence. Either course of conduct, unlike expulsion for misconduct, secures his right to have a free education while the residency question was being investigated. In such a situation, perhaps it would have been the better course if defendant had allowed plaintiff's mother to decide whether plaintiff should remain in H-F at the risk of receiving a tuition charge upon an adverse decision, but we find no authority (and none has been called to our attention) requiring the school administration to pursue such a course. While his objective expectation of continuing at H-F remained to be determined, his right to a free education was not barred by defendants' course of conduct, and it is only in the light of hindsight that it could be determined which course would have caused the least inconvenience. Under the circumstances, we see no due process violation in sending a notice that the school had reason to believe plaintiff was a nonresident while contemporaneously dropping him from the rolls where his parent was invited to provide additional information to assist in the determination of his residence.

Furthermore, we find no merit in the contention that the notice should have incorporated the charge or charges made by the anonymous caller. Unlike expulsion cases which involve allegations and proof of misconduct, there are no charges to be made in a residency case. There exists only a question as to the student's residence (*Turner*), of which issue plaintiff's mother was apprised. Irrespective of being informed of the call, she was aware that the notice she received called for evidence of plaintiff's living conditions as they related to her and Mrs. Bartusiewicz.

■■■ Finally, plaintiff contends that he was not given a meaningful opportunity to be heard and also that the hearing was not before an impartial officer. Again, we disagree. Plaintiff's mother testified that she understood that the completion of the questionnaire constituted an opportunity to be heard. In addition, she engaged in telephone conversations with both Fabian and defendant, had a personal interview with Fabian, and communicated with defendant by mail. During oral

argument before this court, plaintiff could not suggest any further information regarding his residency which had not been presented, except that defendant failed to converse with him personally. We do not find that this was necessary, as we believe the actions of the minor are not crucial to the determination of a residence different from that of his parents; but, rather, the significant factors to be considered are the voluntary actions of the parents and whether any order of court changing custody and control was obtained for school purposes.

■■ Due process of law, by necessity, requires an impartial decision maker and while this role is not barred to one involved in some aspects of a case, the final arbiter should not have participated in making the determination under review. (*Goldberg.*) As noted above, we view defendant's initial action on August 30, 1974, as to a course of conduct to be taken regarding plaintiff was necessary to assure his right to a free education rather than to deprive him of it. Where the action complained of does not work a deprivation of a protected interest, due process requirements do not attach. (*Roth.*) In the case at bar, the deprivation decision to which due process requirements did apply was the one made regarding plaintiff's objective expectancy of continuing his tuition-free attendance at H-F, a decision which required more information than was provided by the school records. Defendant's testimony exhibits a recognition that no real decision was or could have been made as to this issue on August 30, 1974. During cross-examination, he stated that his investigation subsequent thereto was made to "justify" his decision of that date and, on redirect, that he used that term to mean that he sought to discover further information relating to the facts surrounding the custody and control of plaintiff in an effort to ascertain his correct residency. Consequently, when he gave notice to plaintiff's mother that his decision might be reviewed upon receipt of additional information, we believe he used the term "justify" inartfully. It appears to us that he made his only decision as to plaintiff's objective expectancy of remaining at H-F as a tuition-free student on September 18, 1974, and at that time he was not reviewing his action of August 30, 1974, which gave plaintiff the opportunity to protect his right to attend *a* school on a tuition-free basis because defendant had "reason to believe" plaintiff was not a resident of the H-F attendance district.

■■ Therefore, under the reasoning of *Goldberg*, we find that defendant was not barred from being the hearing officer. Moreover, as he based his decision of September 18, 1974, upon evidence material to the three issues required to be considered under Illinois law, *i.e.*, whether the child actually lives in the district on a full-time, indefinite basis; whether custody and control had been transferred by order of court or by the voluntary act of the parents where the child was living apart from his

parents and, if so, whether such transfer was made for the primary purpose of attending school on a tuition-free basis (*Turner; Dean; Ashley; McCaskill; Saxe*), we see no indication of actual partiality.

Finding no denial of due process, we affirm the order entering summary judgment in defendant's favor.

In his cross-appeal, defendant contends the trial court misapprehended the law in finding plaintiff to be a resident of the H-F attendance district and in ordering his enrollment there as a tuition-free student. During the course of oral argument before this court, it became apparent that the court's order requiring plaintiff's enrollment expired by its own terms, as he has since been graduated by H-F. An appeal will be dismissed where a reviewing court has notice of facts which demonstrate that only moot questions or abstract propositions are involved. *People ex rel. Cairo Turf Club, Inc. v. Taylor* (1954), 2 Ill. 2d 160, 116 N.E.2d 880.

> "[A] moot question is one that existed, but, because of the happening of certain events, has ceased to exist and no longer presents an actual controversy over interest [*sic*] or rights of the parties. An abstract question is one in existence, but for which no effectual relief can be granted.
> * * * 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *Harney v. Cahill* (1965), 57 Ill. App. 2d 1, 9-10, 206 N.E.2d 500, 505.

Regarding the question of mootness, defendant argues that school administrators need guidance in determining the appropriate criteria to be employed in residency disputes and that the trial court's finding as to plaintiff's residence will affect future litigation to recover tuition charges when adverse residency determinations are made.

■■ Where a clear public interest in the rendition of an opinion has been demonstrated, a court of review may consider an otherwise moot question. (*Cairo.*)

> "In determining whether or not a question is of sufficient public interest to warrant consideration, certain criteria must be considered. These are: (1) the public nature of the question; (2) the desirability of an authoritative determination for the future guidance of public officers, and (3) the likelihood of further recurrence of the question. [Citations.] The fact that one party to a suit is a public entity is not sufficient, in and of itself, to justify a reviewing court in retaining a case otherwise moot. [Citations.]" *Johnson v. Board of Education* (1967), 79 Ill. App. 2d 22, 25, 223 N.E.2d 434, 436.

Because residency disputes involve a case by case determination of a factual question and because we have already enunciated the issues which must be considered in order to reach such a decision, we do not believe this cross-appeal falls within the public interest exception.

A further exception is made, however, where collateral legal consequences survive the expiration of an order under review. (*In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153.) In the instant case, after determining plaintiff was a nonresident, defendant in his capacity as superintendent of H-F could have filed a counterclaim for his tuition (section 44 of the Civil Practice Act, Ill. Rev. Stat. 1975, ch. 110, par. 44); however, defendant need not file a counterclaim since section 44 is permissive in character, but may choose instead to separately proceed at a later date (*Boddiker v. McPartlin* (1942), 379 Ill. 567, 41 N.E.2d 756). Such a later action could be defeated by the doctrine of collateral estoppel which bars the relitigation of issues actually raised and decided on the merits by a court of competent jurisdiction. (*City of Evanston v. G. & S. Mortgage & Investment Corp.* (1973), 11 Ill. App. 3d 642, 297 N.E.2d 331.) "A judgment is on the merits when it amounts to a decision as to the respective rights and liabilities of the parties, based on the ultimate facts or state of facts disclosed by the pleadings or evidence, or both, and on which the right of recovery depends. [Citations.]" *Style Builders, Inc. v. Fuernstahl* (1975), 32 Ill. App. 3d 272, 275, 336 N.E.2d 369, 371.

Any attempt by defendant here to recover tuition in a subsequent proceeding against plaintiff would be dependent upon a determination of residence. This question was decided in plaintiff's favor by the trial court after hearing evidence concerning the place where he dwells on a full-time basis, the extent of the custody and control relinquished by his mother to his aunt, and the reasons for his living away from his mother. As plaintiff need only raise the doctrine of collateral estoppel to prevent a relitigation of the residency question, we find that a collateral legal consequence has survived the expiration of the injunction requiring our review of the merits of the cross-appeal.

■■ While conceding that plaintiff did dwell with his aunt on a full-time basis and that this was done for numerous reasons other than to attend H-F on a tuition-free basis, defendant argues that a minor may have a residence for school purposes other than that of his parents only where the parents relinquish permanent custody and control of the minor. It is his position that the record shows plaintiff's mother relinquished only that control which naturally flowed from plaintiff's close proximity to his aunt on a day-to-day basis which, he argues, is legally insufficient to establish the requisite transfer of custody and control. We disagree. While the facts in *Ashley* are not on all fours with the instant case, we find its reasoning particularly cogent. There, it was noted that where broken

homes and financial difficulties necessitate finding another residence for the children, they are entitled to tuition-free schooling in the district where they actually reside in the ordinary and popular meaning of the term.

Here, plaintiff was provided with no other home from the time his parents moved to Illinois. The record indicates they were financially unable to provide him with necessary lodging and meals without the assistance of relatives. Eventually, his parents divorced, and his father left the State without providing any means of support for him, resulting in his dependence upon an unemployed mother. In 1968, she did acquire a three-bedroom apartment with adequate space for him, but she continued to be unable to support and maintain him independent of help from her relatives. She remarried, but her husband had no interest in assuming a parental attitude toward her children and, while he did not forbid the children's living with them, he would not contribute to their support and expressed a desire that they live apart from the couple. At the time of the hearing in 1974, plaintiff's mother was separated from her second husband, although not divorced. Throughout this period, the children enjoyed an apparently steady and secure family life provided by their aunt, who not only performed the duties of a cook, maid, chauffeur, and laundress, but also consulted with them regarding family problems and school progress, monitored their whereabouts and choice of companions, and disciplined them when necessary. By the force of time, if not from the inception of the dual living arrangement, plaintiff's mother became somewhat of a visiting consultant in the home of the aunt, who could recall only one time in the year or so preceding the trial that plaintiff spent the night at his mother's home, and this was necessitated because she had undergone surgery.

Notably, at trial it was the testimony of the aunt, rather than that of plaintiff or his mother, which exhibited an insistence that he remain with her. While his mother testified to conferences with the aunt regarding the children, at which agreement was always reached on a course of conduct, this appeared to be her only remaining semblance of custody and control.

Defendant places heavy reliance upon three factors—(1) that it was plaintiff's mother who played the active role in seeking his readmission to H-F and in enrolling him at Bloom in the interim; (2) that except for his lodging and a portion of his food expense, she provided him with financial support; and (3) that relinquishment of custody and control of plaintiff was not an absolute necessity, as she could have solved her financial and family relations problems by other means. We find his reliance to be misplaced.

First, since the conduct of the parent(s) is scrutinized in determining residency questions, she was obviously the person who was required to

furnish the information necessary to a decision, and it is enlightening to note that she nonetheless took no action until she consulted with the aunt.

Second, a parent's financial support of a child living apart for reasons other than for the tuition-free attendance of a school does not necessarily adversely affect the child's residence within the school district (*Dean*), and where, as here, the person with whom the child actually lives provides support to the extent of her financial resources, the parent's support cannot be determinative.

Third, the issue is not whether the relinquishment of custody and control is the wisest course considering all of the circumstances, but whether under all of the circumstances custody and control was in fact relinquished. In the instant case, the trial court held that there was such a relinquishment. Defendant contends, however, that the court failed to appreciate the nicety of a distinction he sets forth as follows:

> "If parents have relinquished custody and control beyond the point or degree which necessarily and naturally results from a minor's physical proximity to another person, the custody and control will be deemed relinquished. If the purported relinquishment of custody and control consists only of the non-parent's exercise of those elements of custody or control which naturally result from the physical proximity of the child, then relinquishment of custody and control will not be deemed to have occurred."

While we agree that this is an apt statement of the applicable criteria necessary to such a determination, our review of the record has failed to detect any misapprehension of this concept by the trial court which, as trier of fact, is in a superior position, having observed the witnesses, to determine their credibility and to assess the weight to be given their testimony, and a court of review will not disturb its decision unless contrary to the manifest weight of the evidence. *Turner*.

Here, we believe that it was inherent in the residency finding that the court believed control and custody were relinquished by plaintiff's mother beyond the degree which necessarily and naturally resulted from plaintiff's physical proximity to his aunt and, from our review of the totality of the circumstances, we cannot say that the court's finding in this regard was against the manifest weight of the evidence.

For the foregoing reasons, we affirm both the issuance of the permanent injunction and the summary judgment in favor of defendant.

Affirmed.

LORENZ and WILSON, JJ., concur.