ISRAEL S., a Minor, by His Aunt, Deborah W. Owens, Plaintiff-Appellant, v. BOARD OF EDUCATION OF OAK PARK AND RIVER FOREST HIGH SCHOOL DISTRICT 200, COOK COUNTY, Defendant-Appellee.

First District (6th Division)   No. 1—91—1134

Opinion filed September 25, 1992.

Deborah W. Owens, *pro se*, and Susan Einspar-Wayne, both of Oak Park, for appellant.

John A. Relias and James J. Zuehl, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellee.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

This appeal involves the power of a school district to reject applications for tuition-free enrollment by children who are not residing with their natural parents. The trial judge upheld the "policy" (or rules) promulgated by the defendant, Board of Education of Oak Park and River Forest High School District 200, which was the basis of the defendant's rejection of the application of the plaintiff, Israel S., to enroll in one of the defendant's high schools. The plaintiff maintains that the defendant's policy is contrary to State law; that he was denied due process and equal protection of the law; and that the defendant violated the Federal Civil Rights Act. 42 U.S.C. §1983 (1988).

On August 28, 1990, Deborah Owens, the plaintiff's maternal aunt and a lawyer, filed a suit on the plaintiff's behalf against the defendant in which she alleged the following. On August 20, 1990, the parents of Israel S. contacted Owens to tell her that Israel would be coming to reside with her permanently. Israel did come to reside with Owens shortly thereafter. Owens went to the defendant's offices seeking to enroll Israel. She took a copy of her contract for a purchase of a home in Oak Park which was set for closing and transfer of possession on September 24, 1990; a copy of the plaintiff's high school transcript; an immunization and health record; an "affidavit of residence" signed by the plaintiff's father; an affidavit of residence signed by Owens stating that the transfer was not for school purposes; and a

power of attorney signed by the plaintiff's father, giving Owens complete educational and medical control over the plaintiff and appointing Owens his guardian "in the event one is needed." Classes were due to start on August 27, 1990, and the plaintiff, who was a senior with plans to attend college, was unable to enroll in any public school. The defendant refused to allow the plaintiff to enroll on either a tuition or tuition-free basis.

The complaint asked that the defendant be enjoined from barring the plaintiff's enrollment in the school on a tuition-free basis or on a tuition basis and for a determination that the plaintiff was a *bona fide* resident of Oak Park.

Concurrently with the complaint for injunction, Owens filed a motion for a temporary restraining order in which Owens swore to the following. She was told by the defendant's residency director that the defendant's rules required her to have legal guardianship of the plaintiff *and* to have a third-party professional or other governmental agency certify that Israel could not reside with his parents due to impossibility or extreme hardship and that, even if she did provide the defendant with a certification by someone else, the district "could determine that this third-party certification was insufficient." When Owens informed the defendant's director that she did not have legal custody or a third-party certification, she was told that she could not enroll Israel in the school.

Owens reminded the residency director that such restrictive policies had been ruled improper by Illinois courts and by the Illinois State Board of Education. The director told her there was nothing he could do about it. She spoke to a member of the defendant's law firm, who later informed her that the defendant continued to refuse the plaintiff's enrollment.

Owens contacted the legal department of the Illinois State Board of Education (ISBE), which sent her various legal opinions and the ISBE's recommended affidavit for establishing residency. An ISBE attorney also told her that the defendant could not exclude the plaintiff for the reasons ascribed and that he would tell that to the defendant's attorney. On August 27, 1990, the ISBE lawyer told her that he did express the ISBE's opinion to one of the defendant's attorneys.

On August 27, Owens went to the defendant with various proofs of residency. After finally conferring with the residency director, she was told that he could not change the policy and allow her to enroll the plaintiff. He gave her more affidavits of residency on the defendant's forms and told her that when the forms were returned, the

defendant's assistant superintendent would take the matter up with the defendant's attorneys.

She returned with the notarized affidavits on the defendant's forms and tendered them to the assistant superintendent's secretary. Later that afternoon Owens spoke to the defendant's attorney. He told Owens that he would ask the defendant to *"consider* allowing [the plaintiff] to attend school *if* she first tendered a filed petition for guardianship of a minor, and that this was all he was prepared to do." (Emphasis in original.) Owens told the attorney that because school started the next day she had no choice but to file for temporary injunctive relief. (As noted, she filed her complaint on August 28.)

On or about September 2, by agreement of the parties, the plaintiff was permitted to enroll on a tuition basis pending the outcome of the injunction complaint. Later, Owens tendered to the defendant an additional power of attorney, signed by both parents, giving Owens full "care, custody and control" of the plaintiff; a copy of the deed to Owens' home; and an electric bill of Owens at the address in Oak Park. A representative of the defendant visited Owens at her home in Oak Park. Owens paid the defendant $1,050, which the defendant claimed was the amount of tuition due through September 30. Owens, however, was unable to make any additional payment. On October 12, the defendant informed Owens that unless she tendered by October 17 another payment of $1,050 plus $556 as an additional charge for the 31 days the plaintiff had already attended school, the defendant would order the plaintiff to be withdrawn from school. By letter, Owens requested a waiver of the payment until the injunction suit had been heard. The defendant did not respond to the letter but told the plaintiff on October 17 that he could not return the following day.

On October 22, Owens filed an amended motion for a temporary restraining order setting out what had transpired between September 2 and October 17. Judge Richard Curry entered a temporary restraining order permitting the plaintiff to attend on a tuition-free basis. Thus, according to the plaintiff, "he missed four school days, missed assignments and tests which could not be made up and suffered a loss in his grades, as a result."

On November 14, Owens filed an amended complaint which claimed the defendant's policy violated State law; the plaintiff was denied due process and equal protection of the law; and the defendant violated the Federal Civil Rights Act. Both sides filed motions for summary judgment. On March 18, 1991, the judge granted the defendant's motion for summary judgment.

We have been informed that the plaintiff subsequently tendered a "third-party certification" which was accepted by the defendant, and that the plaintiff completed his last year of high school. We have also been informed that the district seeks tuition from October 1 through March 1, 1991,[1] of over $7,000 and refuses to refund the tuition previously paid, that is, the sum of $1,050.

The policy which the trial judge upheld and upon which the defendant relies provides, in part, as follows:

> "As used in this policy, the term 'parent' includes a natural or adopted parent with legal custody of the student and also a legal guardian of the student with legal custody, provided that the legal guardianship has not been established solely for the purpose of the student's attending school in the district.
>
> * * *
>
> If a student under 18 years of age resides in this district with a person other than a parent, and parental incapacity or other circumstances render it impossible or an extreme hardship for the student to reside with a parent, the student may attend the school without payment of tuition. A written statement from a third-party professional who is qualified to provide information regarding parental incapacity or extreme hardship is a prerequisite for that consideration. The Superintendent/ Principal will determine whether such a statement is sufficient."

Reduced to its essentials the policy provision in issue spells out, first, what applicants for school enrollment must show and, second, how they must show it.

A legal guardian is a parent within the meaning of that section of the policy in issue before us. We make this observation because there is uncertainty about the grounds for the refusal of the the defendant which were expressed to Owens. In the amended complaint, the plaintiff alleged that the defendant's representatives told Owens that the plaintiff could be enrolled only if she established that she was the legal guardian *and* provided the defendant with a certification by a "third-party professional" of the plaintiff's need to live with his aunt. The defendant's answer is equivocal. The plaintiff later made the same allegation in his motion for summary judgment. The defendant did not take issue with the plaintiff's allegation. In one answer to an

---

[1] We infer that March 1, 1991, represents the date that the defendant accepted the "third-party certification" from the plaintiff.

interrogatory the defendant said that legal guardianship is not a prerequisite for enrollment. In any event, it is now the position of the defendant that its refusal was based on the inability of the plaintiff to establish parental hardship or to prove that the plaintiff was residing with a legal guardian.

■ The applicable law, recognized by both parties, has been set forth in simple terms: A child's residence in a school district other than that in which his parents reside is sufficient to entitle the child to attend school tuition free in the district in which he resides so long as residence is not established solely to enjoy the benefits of free schools. *Turner v. Board of Education, North Chicago Community High School District 123* (1973), 54 Ill. 2d 68, 294 N.E.2d 264, citing *Ashley v. Board of Education* (1916), 275 Ill. 274, 114 N.E. 20.

In order for the defendant's policy to be construed as consistent with the pronouncement of our supreme court, we must say that children can never establish residency for any purpose other than to attend school in a particular district unless they show (1) they are residing with a legal guardian[2] or (2) they are residing apart from their parents only because of parental incapacity or hardship. We decline to so say.

■ In *Kraut v. Rachford* (1977), 51 Ill. App. 3d 206, 366 N.E.2d 497, the appellate court noted that Illinois case law "illustrates a panoply" of instances when children have been found to have a residence different from their parents for educational purposes. They include (1) where the child is adopted; (2) where the child is placed with a family with no intention of withdrawal; (3) where the child's parents have given up all control; (4) where the child's parents live in another State and exercise no control over the child; and (5) where the child's parents are migratory workers. *Kraut*, 51 Ill. App. 3d at 212-13.

■ The defendant has cited no case which would support its right to impose a hard-fast rule such as is contained in its policy. In our judgment, the defendant's policy is an unauthorized abridgment of the general principle enunciated in *Turner* and *Ashley*. In short, in promulgating its policy, the defendant acted beyond the power given it under *Turner* and *Ashley*.

Although not necessary to our decision, we also find that the defendant acted beyond its power when it provided that proof of pa-

---

[2]We note that in *Turner v. Board of Education*, proof of legal guardianship alone was not sufficient to establish residence for school purposes. The defendant's policy also recites that legal guardianship is not sufficient if it was "established solely for the purpose of the student's attending school in the district."

rental hardship or incapacity may be established only by a statement from a "third-party professional who is qualified to provide information regarding parental incapacity or extreme hardship." The term is so ambiguous that reasonable persons would have difficulty in determining who would be considered a "third-party professional" to the satisfaction of the defendant. In answer to our questions at oral argument, the defendant's attorney suggested a clergyman or a social worker as examples of the "professional" to which the policy refers. He was unable to define the term any further for us.

The policy also sets no standards to govern the exercise of the defendant administrator's discretion in evaluating the type of statement. The defendant's answers to interrogatories illustrate the difficulty faced by applicants. Five persons submitted written statements that were determined to be unacceptable by the defendant's superintendent. One letter was written by the parents' attorney "who simply restated in the letter what the mother had told him." The defendant said that this "was rejected because it failed to provide the *objective unbiased opinion* of a third party who was qualified to provide that information." (Emphasis added.) Another letter was written by a counselor of a church; and another was written by a physician in the division of child psychiatry of Cook County Hospital. The letter from the doctor was rejected because it "failed to specify that it would be impossible or an extreme hardship for the student to reside with his parent." We infer that the administrator would not accept any "statement" from a "third-party professional" unless the administrator was satisfied that the third-party was a "professional," that he was unbiased, and that he expressed an objective opinion that it would be impossible or an extreme hardship for the student to reside with his parent. Of course, the policy does not spell out those requirements. By these observations, we do not mean to express any opinion as to what steps a school administrator may take in investigating an application for tuition-free enrollment.

We are not unsympathetic to the problems facing administrators of school districts in determining the eligibility of children to a free education in their districts. But "[i]n most cases the question of residency is not complicated." (*Bowman v. Board of Education* (N.D. Ill. Oct. 15, 1985), No. 84—C—3911.) Indeed, a representative of the defendant visited Owens' home for the purpose of investigating the claim that the plaintiff actually resided with Owens. Owens provided affidavits on forms that were given to her by the ISBE and later on forms given to her by the defendant. She established her blood relationship with the plaintiff. She provided affidavits from the plaintiff's

parents showing their financial difficulties; power of attorney from the plaintiff's father giving Owens complete educational and medical control over the plaintiff; a copy of the plaintiff's high school transcripts; an immunization and health record; and her own affidavit stating that the transfer was not for school purposes. Under all these circumstances, it was unreasonable to further demand of her a "certification" from some unspecified "professional."

For these reasons, we conclude that the defendant's policy was contrary to Illinois law and that summary judgment was improperly granted to the defendant.

■ The defendant maintains that the plaintiff's complaint was properly dismissed because of failure to exhaust administrative remedies. The defendant's policy provides that an adverse decision may be appealed by submitting a written request within 10 days of notification of the superintendent's decision. A hearing on any appeal shall be conducted by a hearing officer or a committee appointed by the defendant which shall make a report of the hearing to the defendant. "The [defendant] *shall attempt to schedule the hearing* and render a decision within 30 days of receipt of the request for a hearing." (Emphasis added.)

It is the general rule that a party aggrieved by an administrative decision ordinarily cannot seek judicial review without pursuing all available administrative remedies. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 547 N.E.2d 437.) The general rule, however, does not apply where a statute or administrative rule is attacked on its face (*Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223); or when it would be patently useless to seek relief before the local body (*Northwestern University v. Evanston* (1978), 74 Ill. 2d 80, 383 N.E.2d 964); or when pursuit of the administrative remedy would result in onerous delay. (*Castaneda*, 132 Ill. 2d at 309.) We believe those exceptions apply to this case and that the plaintiff was not required to exhaust the administrative remedy, such as it was, before filing his complaint.

■ In view of our holding that the policy violated State law, we need not discuss at length the plaintiff's claim that his constitutional rights to due process and equal protection of the law were violated. With respect to the due process claim, the plaintiff relies on *Kraut v. Rachford* (1977), 51 Ill. App. 3d 206, 366 N.E.2d 497. That case is not factually apposite. In *Kraut*, a child had been permitted to attend a school on a tuition-free basis for one year despite evidence that he might not have been a resident in the school district. The court relied on *Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92

S. Ct. 2964, *overruled in part on other grounds by Rust v. Sullivan* (1991), 500 U.S. 173, 114 L. Ed. 2d 233, 111 S Ct. 1759. The *Kraut* court held that the actions of the school district in allowing the plaintiff to attend on a tuition-free basis during his freshman year and further allowing him to proceed to final registration for his sophomore year fostered an objective expectancy in his continuation of an interest which had been initially conferred by the school district. (*Kraut,* 51 Ill. App. 3d at 214.) The facts of the case before us vary markedly from *Kraut.* The defendant notified the plaintiff from the beginning that he would not be permitted to attend tuition-free unless he complied with the policy. Therefore, he could not have had an objective expectancy that he could remain in the school on a tuition-free basis. With respect to the equal protection claim, the case of *Martinez v. Bynum* (1983), 461 U.S. 321, 75 L. Ed. 2d 879, 103 S. Ct. 1838, refutes the plaintiff's position.

The plaintiff's last claim is that the defendant violated the Federal Civil Rights Act (42 U.S.C. §1983 (1988)) and seeks damages and attorney fees. The basis of the section 1983 claim is the plaintiff's contention that he was denied equal protection and procedural due process of law. Because we hold that the plaintiff's claims of a violation of the equal protection and the due process clauses are unfounded, we hold that the plaintiff's section 1983 claim must also fail.

For these reasons, that part of the summary judgment upholding the district's residency policy is reversed and the cause is remanded for further proceedings consistent with the views expressed in this opinion. Those parts of the judgment denying the plaintiff's claim that his constitutional rights of due process and equal protection of the law were violated and his claim that section 1983 of the Federal Civil Rights Act was violated are affirmed.

Judgment affirmed in part and reversed in part and remanded.

McNAMARA* and RAKOWSKI, JJ., concur.

---

*Justice Rosemary LaPorta participated in oral argument before her death. Justice Daniel McNamara was substituted on the panel. He has listened to the oral argument tape and has read the briefs.