**Norman E. CONNELL, Appellant (Plaintiff Below),**

v.

**CITY OF LOGANSPORT, Indiana, Appellee (Defendant Below).**

No. 1–1278A357.

Court of Appeals of Indiana, First District.

Dec. 19, 1979.

J. Richard Sims and Patrick J. Roberts, Cole, Haig & Roberts, Peru, for appellant.

Kelly Leeman, Logansport, for appellee.

Theodore L. Sendak, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, amicus curiae.

**ROBERTSON, Judge.**

Norman E. Connell (Connell) brings this appeal from an unfavorable court review of a disciplinary action brought against him by the Board of Public Works and Safety, City of Logansport (Board), in which Connell was suspended in his duties as a police officer for 120 days without pay and put on probation for 120 days.

Connell raises several procedural and constitutional issues, including whether the Board was legally constituted during the proceedings, whether the Board made sufficient written findings, whether the Board's powers are an unconstitutional delegation of legislative power, whether there was a denial of due process in that the Board allegedly failed to promulgate rules for the conduct of the proceedings, and whether certain language of the police discipline statute and police discipline rules of the City are unconstitutionally vague and overbroad.

We affirm.

The facts which are necessary as background for this appeal are that on or about April 12, 1977, patrolman Connell was called into the police chief's office and was suspended for three days without pay by the Chief because Connell allegedly had not appeared for several court dates and had allegedly caused problems in the chain of custody of evidence in one case. The Chief told Connell to bring him his gun and badge, which Connell did. However, after three or four minutes Connell reappeared in the Chief's office and criticized the Chief's actions against him in an obscene, abusive and threatening manner. Based on these actions, charges were filed before the Board requesting that Connell be discharged. The charges were later expanded to include

those which prompted the three day suspension.

The Board conducted a hearing and found in favor of Connell on the charges concerning appearing in court and the chain of custody problem, but found against Connell on the charges concerning the incident in the police chief's office. The Board disciplined Connell as described above.

The first issue on appeal is whether the Board was legally constituted. Connell argues the Board was illegally constituted at two different periods: when the charges were filed and notice given, and when the hearing was held. At the time the notice was given the Board consisted of the mayor, the city attorney and the city engineer, all members of the same political party. Connell's allegation of harm is that the Board should have been bipartisan under Ind.Code 18–1–11–1.

IC 18–1–11–1 was enacted in 1905 (Acts 1905, ch. 129, § 158) and has not been significantly amended since then. The statute provides in pertinent part that the mayor shall appoint three commissioners, that in a fourth class city such as Logansport the Board shall be of public works and public safety and that not more than two of the commissioners shall be of the same political party.

There is, however, another statute, enacted in 1933, concerning the composition of the Board in fourth class cities: IC 18–2–1–5. This statute provides:

> In all cities of the fourth class the duties of the board of public works and the duties of the board of public safety as now provided by law shall be performed by a board to be known as the "board of public works and safety" which board shall be composed of the mayor, the city attorney, and the city civil engineer . . . .: Provided further, That the mayor may appoint a resident freeholder of the city to fill the position on such board which is otherwise held by the city attorney.

Connell contends that the bipartisan requirement of IC 18–1–11–1 must be read into IC 18–2–1–5. We reject such a contention. It is a basic rule of statutory construction that all statutes relating to the same subject are to be construed together, but in a case where two or more statutes deal with the same matter in different language, the latest expression of the legislature is controlling. *State ex rel. State Board of Tax Commissioners v. Daviess Circuit Court,* (1967) 249 Ind. 580, 230 N.E.2d 761. And, it has been said that statutes dealing with the same subject matter will be construed as being harmonious, if possible, but where there is an irreconcilable conflict, a statute which is more recent and specific will control over the one which is older and more general. *State ex rel. Eastern Pulaski Community School Corporation v. Pulaski Circuit Court,* (1975) 264 Ind. 37, 338 N.E.2d 634; *Gonser v. Board of Commissioners for Owen County,* (1978) Ind. App., 378 N.E.2d 425. In this case, the two statutes prescribe two very different methods of appointing Board members and therefore, the latter and more specific statute that relates to fourth class cities must prevail. If we were to accept Connell's viewpoint, we would be forced to hold that a mayor must appoint either a city attorney or a city engineer (or both), who is not of his or her party—a result surely not intended by the legislature.

Connell's second contention concerns the makeup of the Board at the time of the hearing. Prior to the hearing, the city attorney resigned from the Board and was replaced by a resident freeholder. Apparently, this action was taken on authority of *City of Mishawaka v. Steward,* (1974) 261 Ind. 670, 310 N.E.2d 65, which held that it was a denial of due process for the city attorney to advocate the city's position and still remain on the Board to judge the case.[1]

---

1. This action was also taken because of a decree from the Cass County Circuit Court which endorsed the removal of the city attorney and the replacement by a resident freeholder. The decree was a culmination of a preliminary injunction and a declaratory judgment action by Connell against the Board questioning the make-up of the Board and the constitutionality of the statutes. This action by Connell was filed before the Board's action.

At the hearing, the resident freeholder announced that he was on the Board for a month. We do not find this arrangement to be a violation of the above statutes or the *Steward* case.

▮ The next issue presented for our review is whether the findings made by the Board contained enough specificity. We first note that IC 18–1–11–3 states that the written reasons for the action against the policeman shall be entered upon the records of the Board. In *City of Fort Wayne v. Bishop*, (1950) 228 Ind. 304, 92 N.E.2d 544, this section was seen as written *charges* to be made against the officer. Thus, the written reasons for the dismissal are in the nature of a criminal information. For example, the officer can rely on the written reasons as containing the only charges against him and the evidence and further findings of the Board can not enlarge them. *Bishop, supra* at 228 Ind. 312, 92 N.E.2d 547.

Thus, the statute does not contain a requirement that the Board make written findings after the hearing. However, since this is an administrative action reviewable by the judicial process, it is clear that written findings after the hearing are required regardless of whether the statute requires them. *See Yunker v. Porter County Sheriff's Merit Board*, (1978) Ind.App., 382 N.E.2d 977, 983; *Hawley v. South Bend Department of Redevelopment*, (1978) Ind., 383 N.E.2d 333, 336.

▮ In this case, the Board did make an entry stating that it found for Connell on two charges and against him on two and found Connell

> . . . guilty of conduct unbecoming to a police officer, was guilty of insubordination and disrespect toward a superior officer, was guilty of using coarse, profane and insolent language to a superior officer in violation of the rules of the Police Department of the City of Logansport and IC 18–1–11–3.

However, the "written reasons" given to Connell before the hearing, and referred to in the entry by the Board, contained extensive statements and alleged facts that constituted the wrongful acts. We determine that the written reasons or charging document can be read together with the entry of the Board to constitute the findings of the Board, especially since the entry refers to the charging document. Read together, the findings are specific enough for the court to intelligently review the Board's action. *See Capitol Improvement Board etc. v. Public Service Commission*, (1978) Ind.App., 375 N.E.2d 616, 631.

Connell next raises the issue of whether there has been an unconstitutional delegation of authority to the Board by the legislature. The legislature has delegated authority to the Board to discipline policemen. It has been stated:

> Reasonable standards must be imposed where the Legislature delegates discretionary powers to an administrative officer. However, the policy of the Legislature, and the standards to guide the administrative agency may be laid down in very broad and general terms. Such terms get precision from the knowledge and experience of men whose duty it is to administer the statutes, and then such statutes become reasonably certain guides in carrying out the will and intent of the Legislature. [Citations omitted.]

*Matthews v. State*, (1958) 237 Ind. 677, 681–82, 148 N.E.2d 334, 336. *See also Schakel v. Review Board of the Indiana Employment Security Division*, (1968) 142 Ind.App. 475, 235 N.E.2d 497; *Indiana University v. Hartwell*, (1977) Ind.App., 367 N.E.2d 1090.

In examining the authority given to the Board in IC 18–1–11–3 to discipline policemen, we have no doubt that standards have been set by the legislature to guide the Board. The statute states:

> On the conviction in any court of a member of the said fire or police force . . . of any criminal offense, or upon a finding and decision of the board that any such member has been or is guilty of neglect of duty, or of the violation of rules, or neglect or disobedience of orders,

or of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare or conduct unbecoming an officer, or other breach of discipline, such commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay.

█ The statute not only sets out the types of action requiring discipline, but also sets out the type of punishment that can be given. The statute also sets out specifically the procedure to be taken in discipline actions. This statute, existing for some 70 years, is a proper delegation of authority.

█ Connell next alleges as error the failure of the Board to promulgate rules as to how the hearing would be conducted. He points to the language in IC 18–1–11–1 that states:

Such Commissioners shall have power, for cause assigned on a public hearing, and on due notice, according to rules to be promulgated by them, to remove or suspend from office, or for a definite period deprive of pay, any officer or member of such police force . . . ..

Connell contends that the Board should have promulgated rules as to how the hearing would be conducted and particularly complains that no consistent rules of evidence were applied in his hearing. We disagree that IC 18–1–11–1 requires that rules of evidence for hearings must be promulgated by the Board. The Board hearings are administrative actions which allow for less formality than in civil proceedings before a court and we will not disturb the Board's decision for the lack of promulgated rules of evidence as long as the hearing was full and fair, before an impartial body and conducted in good faith. *See City of Evansville v. Nelson,* (1964) 245 Ind. 430, 438, 199 N.E.2d 703, 708.

█ We next address the issue of whether the language in IC 18–1–11–3 describing proscribed acts and the Logansport Regulations are vague and overbroad. We first note that the statutes concerning the discipline of police have been said to be penal,

remedial and civil in nature. *City of Fort Wayne v. Bishop,* (1950) 228 Ind. 304, 92 N.E.2d 544. The statute is intended to protect the police officers in their offices, but there is an equal or greater interest that the public be protected by police departments composed of well-disciplined police officers. *City of Evansville v. Nelson, supra* at 245 Ind. 438, 199 N.E.2d 708. We must remember that the statute, although as stated above is penal in nature, does not directly involve the general public. Rather, the statute was adopted as a regulation of the internal affairs and to protect the public trust and integrity of the police. *See Allen v. City of Greensboro,* (1971) 322 F.Supp. 873, 877–8 (M.D.N.C.), *affirmed* 452 F.2d 489. It has further been said, "The most conscientious of codes that define prohibited conduct of employees includes 'catchall' clauses prohibiting employee 'misconduct', 'immorality', or 'conduct unbecoming'." *Meehan v. Macy,* (1968) 129 U.S.App. D.C. 217, 230, 392 F.2d 822, 835 (D.C.Cir.).

█ With this caveat we note the standard invoked in a vagueness analysis is that a statute is not unconstitutionally vague if an individual of ordinary intelligence would comprehend it so as to adequately inform him of the conduct proscribed. *See, e. g., Sumpter v. State,* (1974) 261 Ind. 471, 306 N.E.2d 95.

The statute states that an officer may be disciplined for cause other than politics. Causes are conviction of a crime, neglect of duty, violation of rules, or neglect or disobedience of orders, of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare or conduct unbecoming an officer, or other breaches of discipline. Specifically, Connell complains of the language in IC 18–1–11–3 of "conduct unbecoming an officer" and the following city regulations:

OFFENSES: Offenses for which charges may be preferred:

6. Conduct unbecoming to a police officer.

7. Insubordination or disrespect toward a superior officer.

13. Using coarse, profane or insolent language to a superior officer or to any other member of the department or to any citizen.

 We hold that this language is not so vague as to not inform a policeman of the standard to which he is held. We add that the language of the statute is built upon seventy years of application. The police can be compared to the military in this regard, and vagueness and overbreadth claims have been rejected in the "conduct unbecoming" language found in the military code. *See Parker v. Levy,* (1974) 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439.

We further hold that in this case Connell, regardless of the statute or regulations, was informed by his own behavior that he was subject to discipline. No employee, whatever the job, could expect to avoid discipline when addressing his superiors in obscene, abusive and threatening language. Thus, the statute was not vague as applied to Connell and he lacked standing to challenge it. *See Meehan, supra* 129 U.S.App.D.C. at 230, 392 F.2d at 835.

Connell next complains that the above regulation, subparagraph 13, violates the principles of the First Amendment. Specifically, Connell argues that because the regulation is not limited to "fighting words" and obscene language, the regulation is overbroad and must be struck down.[2]

 Obviously, a person does not relinquish his or her First Amendment rights by becoming a police officer. On the other hand, the City, as an employer, does have an interest in regulating an officer's speech in promoting the efficiency of the public services it performs through its employees.[3] A balancing of these two interests is required here. *See Pickering v. Board of Education,* (1968) 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811.

 As stated before, the statutes in question and the regulation promulgated under their authority were enacted to protect officers from discharge without cause and equally to protect the public by providing an efficient police force. The statute was not passed to restrain constitutionally protected speech. We thus construe this regulation as proscribing only that speech defined in the regulation which "improperly damages and impairs the reputation and efficiency of the employing agency . .." *Arnett v. Kennedy,* (1974) 416 U.S. 134, 162, 94 S.Ct. 1633, 1648, 40 L.Ed.2d 15. Under this standard, there is no doubt that Connell's language violated the regulation.

Judgment affirmed.

LOWDERMILK, P. J., and NEAL, J., concur.

---

**2.** We have no doubt that Connell used "fighting words" in this case; however, he still has standing to attack the statute on First Amendment grounds. *Gooding v. Wilson,* (1972) 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408.

**3.** We reiterate that the statute and regulation apply only to an employee relationship and not to the general public.