Jersey **MARTINCICH, Appellant**
**(Plaintiff Below),**

v.

**CITY OF HAMMOND, Appellee**
**(Defendant Below).**

No. 3–1279A360.

Court of Appeals of Indiana,
Third District.

April 20, 1981.

Sheldon H. Cohan, Merrillville, for appellant.

Robert G. Berger, Abrahamson, Reed & Tanasijevich, Hammond, for appellee.

HOFFMAN, Presiding Judge.

Jersey Martincich appeals the trial court's judgment sustaining a decision of the Hammond Board of Public Works and Safety dismissing him from the Hammond Police Department. Martincich presents the following issues for review:

(1) whether Martincich's right to avoid self-incrimination was violated in both an interview in the police chief's office and during the hearing before the Board of Public Works and Safety;

(2) whether due process was violated by the absence of one member of the Board during portions of the testimony;

(3) whether the participation of the city attorney as president of the Board of Public Works and Safety was improper;

(4) whether the Board violated IC 1971, 18–1–11–3 by failing to include in its records written reasons for Martincich's dismissal; and

(5) whether Martincich's dismissal was in accordance with the rules and regulations of the Hammond Police Department.

The record indicates that Martincich was awakened and escorted to the police chief's office by other officers on the night of September 21, 1970. The chief read the *Miranda* rights to Martincich and then questioned him about his relationship with certain individuals and his actions in selling outboard motors and other merchandise at suspiciously low prices. Also present were the attorney for the police department, an FBI agent and other Hammond police officers. Following the questioning, the chief filed a request for Martincich's dismissal with the Hammond Board of Public Works and Safety. The charges against Martincich may be summarized as follows:

1. that he associated with known burglars;

2. that he never requested permission to associate with such persons;

3. he refused to answer questions put to him by the chief;

4. he offered to sell goods to certain businesses at suspiciously low prices;

5. he told one of the known burglars that he could get rid of certain stolen merchandise;

6. that he bought six outboard motors from one of the named individuals; and

7. that he cooperated with one of the same persons in checking to see if the police department knew about an outstanding warrant.

The Board of Public Works and Safety conducted a hearing on the charges. The chief of police was represented by an attorney who was apparently not associated with the city attorney's office. The Board was presided over by John Leeney, the city attorney. The other members of the Board were the city engineer, Tom Conley, and the city comptroller, Donald Gavit. Mr. Gavit was not present during a portion of the testimony, due to illness, but did participate in the Board's deliberations. The Board found sufficient evidence to sustain all but one of the charges against Martincich and discharged him.

Following the Board's decision Martincich filed a complaint to reinstate which was eventually tried in the Porter Superior Court. The trial court made findings of fact and conclusions of law and entered judgment affirming the Board's decision.

Martincich first asserts that his Fifth Amendment right to be free from self-incrimination was violated in two respects. He contends that the initial questioning before the chief placed him in a position of either making self-incriminating statements or being discharged for refusing to answer. Martincich also argues that his right was abridged when the Board ruled that if Martincich chose not to testify when called as a witness by the police chief, he would be precluded from later testifying in his own defense.

It must initially be noted that the availability of the Fifth Amendment privilege does not depend on whether a proceeding is civil, criminal or administrative, but rather, on whether a statement is, or may be, inculpatory. *Haskett v. State* (1970), 255 Ind. 206, 263 N.E.2d 529. Although the privilege is available in a civil or administrative proceeding, it may be properly invoked only when a person is compelled to give statements which may be incriminating. "[T]he purpose of the fifth amendment is to prevent compelled *self-incrimination*, not to protect private information." (Original emphasis.) *Eaton v. State* (1980) Ind., 408 N.E.2d 1281, at 1283, citing *Fisher v. United States* (1976) 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39. *Garner v. United States* (1976) 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370; *United States v. Nobles* (1975) 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141.

A review of the record fails to disclose any incriminating statements made by Martincich. The only charges made by the chief which could give rise to a criminal prosecution were those related to Martincich's receiving and selling possible stolen merchandise. The other charges against Martincich, although they may have been sufficient to subject him to departmental disciplinary action, were not sufficient to initiate a criminal prosecution. Martincich, when asked about the merchandise, at all times denied either knowing of, or selling, stolen merchandise. Instead, Martincich explained how some of the merchandise came into his possession and denied ever having possession of other merchandise. These statements were self-serving, not self-incriminating.

There is also no evidence that Martincich was compelled to make any statements. Before the chief began to question Martincich, he informed the officer of the right to remain silent and his right to counsel. Martincich answered many questions without invoking either of these rights.[1] There is no indication that anyone told Martincich that he would be discharged if he refused to answer incriminating questions. The only evidence in this regard was a question put to Martincich concerning his state of mind at the time of the interview in the chief's office. Martincich replied, "I figure I could get suspended at the time." This is hardly evidence of compulsion.[2]

There is also no evidence that Martincich was compelled to testify against himself at the Board meeting. When Martincich objected to being called as a witness for the police chief, the Board ruled that he could refuse to testify, but if he did so, he would be precluded from testifying at a later time. This ruling did not compel Martincich to testify, but rather, it forced him to make a decision at the beginning of the hearing as

1. Martincich requested the assistance of counsel at some time during the interview. At that time the questions were discontinued.

2. One of the charges against Martincich was his refusal to answer questions regarding the stolen merchandise. Assuming, without deciding, that this charge was improper due to Martincich having been informed of the *Miranda* rights, any error is harmless inasmuch as the Board did not find sufficient evidence that Martincich refused to answer questions. With respect to charge no. 3, the Board found that Martincich was guilty of insubordination, not because he exercised his rights under the Fifth Amendment, but rather because he chose not to exercise those rights and, instead, gave incomplete and evasive answers.

to whether or not he would testify. Furthermore, when Martincich chose to testify, the president of the Board pointed out that Martincich could refuse to answer individual questions. Martincich failed to exercise this right. It is clear that Martincich's Fifth Amendment rights were adequately protected both in the chief's office and during the Board's hearing.

Martincich next challenges Mr. Gavit's participation in the Board's deliberations. Martincich contends that because Mr. Gavit did not hear all of the testimony he may have had an improper influence on the decisions of the other Board members.

■ At the hearing Martincich objected to proceeding without Mr. Gavit, apparently because he felt that the nature of the hearing mandated a full Board. These objections were phrased in terms of jurisdiction. IC 1971, 18–1–11–2 (Burns Code Ed.) provides that any two members of the Board constitute a quorum. Inasmuch as Mr. Conley and Mr. Leeney were present to hear all the testimony, Martincich's objections were properly overruled. The presence of Mr. Gavit was not necessary for an adjudication of the matter.

■ Martincich's argument on appeal differs from that raised at the hearing. Martincich now contends that Mr. Gavit may have improperly influenced the other members of the Board. The record discloses that at the close of the testimony President Leeney stated:

"I would like an opportunity to talk with Mr. Gavit and Mr. Conley before deciding what action will be taken, so we will just be excused for a few minutes and let you know."

At this time no objection was raised to Mr. Gavit participating in this discussion. In fact, no objection was raised until after President Leeney announced the Board's decision. That objection still pertained to the Board's jurisdiction and not to Mr. Gavit's participation in the deliberations. Martincich cannot sit idly by until the Board announces its decision and then, if he finds the result not to his liking, object to the

procedure utilized. Issues are not preserved on appeal unless a proper and timely objection is made. *Dudley Sports Co. v. Schmitt* (1972), 151 Ind.App. 217, 279 N.E.2d 266.

Martincich further contends that it was an error for Mr. Leeney, the city attorney, to sit as a member of the Board. Martincich argues that Mr. Leeney was in a position to act both as an advocate for the City and as a decisionmaker. *City of Mishawaka v. Stewart* (1974), 261 Ind. 670, 310 N.E.2d 65 is cited for the proposition that such a dual capacity arrangement is improper.

■ It is well settled that due process is violated when a city attorney acts in dual capacities as an advocate and a decisionmaker. *City of Mishawaka v. Stewart, supra.* It has also been held that a fair hearing is not provided when an assistant city attorney represents the city in a hearing in which the city attorney sits as a decision making member of the Board. *City of Hammond v. State ex rel. Jefferson* (1980), Ind.App., 411 N.E.2d 152. Neither of these situations was present in Martincich's hearing. Although the city attorney participated in the decision making process, there is no indication that the attorney representing the police department was a member of the city attorney's staff. Therefore, no error was committed by Mr. Leeney in sitting as a member of the Board.

Martincich relies on Mr. Leeney's questioning of the witnesses as evidence to establish a "prosecutorial bias." Martincich also refers this Court to various rulings made by Mr. Leeney as president of the Board to support his claim of bias.

The goal of an administrative agency hearing is to gather enough facts to allow the agency to make an informed decision. To facilitate the achievement of this goal, a member of the Board is entitled to question witnesses in order to clarify the testimony. This is similar to the authority of a trial judge to question witnesses during a trial. The record reveals that Martincich had difficulty in either understanding the questions asked by counsel or in expressing his answers. Although at times Mr. Leeney's

questions were quite pointed, they were obviously designed to elicit answers necessary for a just decision. Mr. Leeney's questions to Martincich, and to the other witnesses, fail to establish an improper "prosecutorial bias."

■ Martincich also attempts to show bias by referring the Court to the president's rulings on various objections. Only one such ruling however is argued as being incorrect. This issue was not specifically addressed in Martincich's motion to correct errors and is therefore waived.[3]

Martincich next argues that the Board's actions were contrary to IC 1971, 18–1–11–3 in that there is no evidence that the written reasons for Martincich's dismissal were ever entered upon the records of the Board.

■ The statutory requirement of entering the written reasons for an officer's dismissal upon the records of the Board has been interpreted to require that the charges filed against an officer be a part of the Board's records prior to the hearing. *City of Ft. Wayne v. Bishop* (1950), 228 Ind. 304, 92 N.E.2d 544; *Connell v. City of Logansport* (1979), Ind.App., 397 N.E.2d 1058. This is to insure that the officer will be able to have knowledge of the specific charges against him. The Board's records prior to the hearing were never introduced into evidence, nor made a part of the record of proceedings in any other manner. There is no apparent error contained in the record of proceedings now before this Court. Any alleged errors which are based on information which was never a part of the record of proceedings cannot be considered on appeal. *Burrus v. Silhavy* (1973), 155 Ind.App. 558, 293 N.E.2d 794.

Even had the charges not been entered in the Board's records prior to the hearing, the omission would have been harmless. A re-

view of the record indicates that Martincich had actual notice of the charges against him and an ample opportunity to prepare to answer the charges. Martincich fails to show any prejudice against him if, in fact, the reasons had not been entered in the Board's records. The decision of a trial court will not be reversed absent a showing of harm. Ind.Rules of Procedure, Trial Rule 61.

In his brief, Martincich apparently raises the issue of whether the Board's findings contain the requisite specificity. IC 1971, 18–1–11–3 contains no requirement that the Board make written findings after the hearing. Such findings must be entered however to allow for judicial review of the administrative action. *Connell v. City of Logansport, supra.* Here, as in *Connell,* when the findings are read in conjunction with the charging document, they are specific enough for the court to review the Board's findings. Martincich therefore has failed to show reversible error.

■ Martincich argues finally that his dismissal is unlawful because the rules and regulations of the Hammond Police Department do not specify what kind of disciplinary action may be taken for violations of the rules and regulations. While it is true, as Martincich asserts, that when an agency promulgates rules and regulations it is bound to follow those rules and regulations, the failure to specify what type of disciplinary action may be taken does not preclude the taking of any action. IC 1971, 18–1–11–3 provides for disciplinary actions as follows:

" . . . such commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, *dismissal* or reducing him or her to a

---

**3.** At the time Martincich filed the motion to correct errors, Ind.Rules of Procedure, Trial Rule 59(G) provided:

"In all cases in which a motion to correct errors is the appropriate procedure preliminary to an appeal, such motion shall separately specify as grounds therefor each error relied upon however and whenever arising up to the time of filing such motion. Issues which could be raised upon a motion to correct errors may be considered upon appeal only when included in the motion to correct errors filed with the trial court. A motion to correct errors shall not be required in the case of appeals from interlocutory orders, orders appointing or refusing to appoint a receiver, and from orders in proceedings supplemental to execution."

lower grade and pay." (Emphasis added.)

Since the rules and regulations promulgated by the Board did not limit the manner in which an officer may be disciplined, the Board was free to utilize any method authorized by the statute.

For the above reasons the decision of the trial court is affirmed.

Affirmed.

GARRARD, J., concurs.

STATON, J., concurs in result.