**Manuel LOPEZ, Relator,**

**v.**

**OWATONNA MANUFACTURING COMPANY, Respondent,**

**Commissioner of Economic Security, Respondent.**

**No. 50929.**

Supreme Court of Minnesota.

April 24, 1981.

---

Manuel Lopez, pro se.

Warren Spannaus, Atty. Gen., William G. Brown, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by the court en banc without oral argument.

SIMONETT, Justice.

The employee, Manuel Lopez, appeals a denial of unemployment compensation benefits by the Commissioner, Department of Economic Security.[1] The issue on appeal is whether the failure to present a doctor's release form, certifying the employee's good health after a work injury, can be deemed a voluntary termination. Minn.Stat. § 268.09, subd. 1(1) (1980). Here the employer had reliable medical information that the em-

ployee was in good health and was, therefore, not justified in considering the employee voluntarily terminated. We reverse.

Manuel Lopez began work as a full-time metal worker for Owatonna Manufacturing Company January 21, 1979. Owatonna Manufacturing has an established policy for employees returning to work after an injury: "On all work-connected or non-work-connected injuries requiring medical treatment, it will be necessary to have a doctor's release before we can put you back to work."

Mr. Lopez has difficulty understanding and communicating in English. He injured his right middle finger on a metal cutter August 23, 1979. He was sent to a company doctor, Dr. McEnaney. McEnaney had been doing medical work for Owatonna Manufacturing since 1956; company officials testified his usual practice was to report back to the company or send a release along with the employee.

On August 27, 4 days after the injury, Lopez was treated and rebandaged by Dr. McEnaney. Office medical records indicated he was fit to return to work. However, no report or release was given. During the next 3 weeks, Lopez, apparently confused, twice attempted to return to work but was told he needed a release; he went to the unemployment office but was told he was ineligible because able to return to work; and he returned to Dr. McEnaney to get a medical release but failed to present it to his employer.

Finally, on September 18, 1979, the plant safety director, Mr. Sage, called Dr. McEnaney's office. He was told that Lopez had been fit to work since August 27 and that Lopez had a release slip dated September 12 in his possession. Sage and the plant foreman, Mr. Aldorfer, concluded that, since Lopez had failed to present the medical release, he must have been deliberately planning not to return to work. Conse-

---

1. This case first came to us on February 20, 1980, when, by order of the court, the matter was remanded for a new hearing before the appeal tribunal. The second tribunal affirmed the compensation judge's denial of benefits. The decision of this second tribunal is now before the court.

quently, when Lopez returned to Owatonna Manufacturing a third time, on October 7, 1979, he was told that he was considered terminated.

The appeals tribunal found the employer's medical policy to be reasonable and, therefore, Lopez' behavior to be a voluntary termination within the meaning of Minn. Stat. § 268.09, subd. 1(1) (1980). We cannot agree, it being the employer's burden to establish that the employee has voluntarily terminated employment. *Marz v. Department of Employment Services*, 256 N.W.2d 287, 289 (Minn.1977). Once Owatonna Manufacturing knew, from reliable medical information, that Lopez was fit to work, its medical policy was sufficiently satisfied. Lopez should have been put back to work on October 7 and is entitled to benefits from that date.

It is true, as the company argues, the employee's behavior is inexplicable at points. Lopez had a medical release, yet did not present it. He complied with the medical release policy in a July 1979 injury, yet was not able to understand the policy later with this second injury.[2] These occurrences may be explainable by the language difficulties of the employee.

 But the employer's behavior is also inexplicable. This is important, since it is the employer, not the employee, who has the burden to prove termination. The employer's agent, Mr. Sage, was told Lopez had a release slip, yet did not ask for it. Dr. McEnaney and the company had been in constant and routine contact for 25 years, yet no effort was made to clear up the confusion. The company had a verbal confirmation that a doctor's release was given, yet concluded this did not satisfy company policy that stated "it will be necessary to have a doctor's release before we can put you back to work." Lopez was deemed to have quit, despite having returned on three occasions asking to work.

Under these circumstances, where the actions of both parties are ambiguous, we hold it was the employer, not the employee, who terminated the employment relationship. The employer failed to sustain its burden of proof. Lopez is entitled to receive unemployment benefits from October 7, 1979.

Reversed and remanded to enter a decision and order benefits for the relator.

---

2. The employer argues this proves the employee understood the medical policy and should not be excused for noncompliance. We think, because of the employee's language difficulties, it is not conclusive evidence. At one point, for example, Lopez testified he presented "the card that I'd been to see the doctor," apparently confusing this card with the release form. In light of the other evidence in the case, we find the employer's burden of proof is not met.