Larry ZEIG (# 13884) and Jerry Zeig (# 13885), Plaintiffs and Appellants,

v.

SOUTH DAKOTA DEPARTMENT OF LABOR, UNEMPLOYMENT INSURANCE DIVISION, Defendant and Appellee.

Nos. 13884, 13885.

Supreme Court of South Dakota.

Argued Jan. 18, 1983.

Decided Aug. 10, 1983.

N. Dean Nasser, Jr., Sioux Falls, for plaintiffs and appellants.

Drew C. Johnson, S.D. Dept. of Labor, Unemployment Ins. Div., Aberdeen, for defendant and appellee.

MORGAN, Justice.

This is an appeal joining two separate claims for unemployment insurance benefits. The circuit court affirmed the decision of the Secretary of the Department of Labor (Secretary) upholding an appeal referee's determination that Larry and Jerry Zeig, appellants (Zeigs), were overpaid unemployment insurance benefits. Zeigs appeal and we reverse and remand.

Zeigs were employees (truckdrivers), stockholders (forty-seven percent each), and officers (president and vice-president) of J & L Gravel, a corporation (Corporation). Corporation, which was in the business of hauling gravel during the construction season, and snow during off-season winter months, experienced financial difficulty beginning in the summer of 1979, resulting in the filing of a Chapter 11 Bankruptcy Petition in January of 1980. While three of their five trucks, their gravel loader and conveyor, were repossessed, they anticipated continuing the corporate business with the two remaining trucks.

Zeigs applied for unemployment insurance benefits to the Department of Labor (Department) in February, 1980. At that time, they reported to Department that they had been laid off from Corporation and indicated that they were attempting to line up work for Corporation. Accordingly, Department employees told Zeigs that they would not be required to make the required weekly contacts in order to maintain their eligibility, but rather, that they could indicate that they were on call with Corporation. During the next four months, Zeigs made a number of job contacts looking for work, both for Corporation and for themselves individually. They did not, however, list any of these job contacts on their continued claim forms, nor did they keep record of these job contacts. In June, 1980,

Zeigs started working as individual employees for a different employer, which apparently triggered an investigation.

In June of 1980, Department notified them that they were ineligible for the unemployment benefits previously paid, "because [they are] a member of a corporation and the activity in which [they are] engaged is potentially profitable and also, [they have] maintained a connection with that activity." Unemployment Insurance Division Determination Notice dated June 2, 1980. Department declared Jerry was overpaid in the amount of $1,774.00 and Larry was overpaid in the amount of $1,526.00. Upon Zeigs' request for a hearing, an appeal referee for Department entered a decision adverse to Zeigs. The appeal referee found in essence that Zeigs were not unemployed for the purpose of the unemployment compensation statutes, that they were the owners of Corporation and as such were self-employed and intended to get the business operational in the spring. Zeigs' appealed this decision to Secretary who affirmed, and then to the circuit court. At this point, by stipulation of the parties, the matter was remanded to Department for a new hearing. The merits of this first decision are therefore not before us.[1]

Upon rehearing, the appeal referee took a different tack, by finding that although Zeigs claimed to be actively seeking work, contrary to their original claim (i.e., that they were on call to Corporation), there was no evidence submitted by Zeigs of the minimum two contacts per week as required of some claimants by a Department brochure.[2] For that reason, the appeal referee decided that Zeigs did not meet the eligibility requirement of actively seeking work. Secretary and the circuit court affirmed this appeal referee's decision and Zeigs appeal to this court.

The issues on this appeal, as framed by Zeigs, are: (1) Whether Zeigs were denied due process and equal protection by the hearing procedures utilized by the appeal referee, and (2) was the decision of the appeal referee clearly erroneous? The trial court's memorandum opinion incorporated in its dispositional order broke the first issue down into four sub-issues which we shall initially address.

The first procedural error, of which Zeigs complain, was the admission of certain hearsay testimony, particularly a report written by one Pat Feiock, on a telephone conversation with Larry Zeig. The key evidence in this report seems to be, "[c]ontacts made for employment are not for myself—they are for the corporation." While this might have been evidence on which appeal referee relied in the first decision, that decision is not before us. It is obvious that it was not relied on by the appeal referee in arriving at the second decision; therefore, we determine that this issue is moot.

The next procedural error of which Zeigs complain was that the appeal referee imposed arbitrary standards on Zeigs, thus causing the burden of proof to improperly shift to them. We are mindful that here Department had the burden of proving Zeigs were not eligible for benefits. 81 C.J.S. Social Security § 275 (1977); *Lopez v. Owatonna Mfg. Co.,* 304 N.W.2d 647 (Minn.1981); *Marz v. Department of Employment Services,* 256 N.W.2d 287 (Minn. 1977). Further, when an unemployed individual fails to apply for work when so directed by Department, Department will deny unemployment compensation benefits. SDCL 61–6–15.[3] In this regard, the trial

1. Chief Justice Fosheim's dissent apparently fails to recognize that the appeal referee's first decision is not before us and thus, whether Zeigs are entitled to benefits because they were officers of the company is not at issue on this appeal.

2. The record reflects that at the time Zeigs applied for benefits, they were instructed by Department personnel that they were not re-quired to make these minimum employment contacts.

3. SDCL 61–6–15 provides, in pertinent part:

If the department finds that an unemployed individual has failed, without good cause, either to apply for available suitable work when so directed by the employment office or the department or to accept suitable work when offered him, or to return to his customary self-

court found that Department had met its prima facie burden by introducing the weekly claims forms which showed no contacts. The burden of proof then shifted to Zeigs to rebut Department's prima facie case. The trial court held Zeigs failed to rebut this evidence. We agree with the trial court's holding only as to the allocation of the burden of proof on this issue.

The next procedural error claimed by Zeigs is that the appeal referee was biased since he was acting as an investigator, prosecutor and judge and consequently they were denied due process of law.[4] The trial court upheld the procedural aspect, determining that SDCL 1–26–26 [5] merely provides that the investigator shall not take part in rendering the decision. There appears to be no question but what the appeal referee was not the investigator in this case. We disagree, however, with the circuit judge's decision.

SDCL 61–7–6 [6] specifically mandates the appointment of an impartial appeal referee. The prosecutor-judge role played by the appeal referee in this case is simply inconsistent with this requirement. We recognize that the federal court in *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), and *Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), approved of this dual role for administrative law judges. These cases, however, are easily distinguishable because administrative law judges in the federal system are independent of the agency for whom they are conducting the hearing. It is a far cry from the appeal referee situation in South Dakota.

This court in *Mordhorst v. Egert,* 88 S.D. 527, 223 N.W.2d 501 (1975), discussed due process principles in administrative proceedings. In *Mordhorst,* this court held that defendants were denied due process since the State Board of Examiners in Optometry had acted as both prosecutor and judge in disciplinary proceedings against the defendants. Other courts agree that to comply with due process requirements, these functions must be separated to the extent that there is protection from prejudice or bias. *Clark v. Iowa Dept. of Job Service,* 317 N.W.2d 517 (Iowa 1982); *Appeal of Kriss,* 57 Pa.Cmwlth. 326, 426 A.2d 1216 (1981); *Tweedy v. Oklahoma Bar Ass'n,* 624 P.2d 1049 (Okl.1981); *Kraut v. Rachford,* 9 Ill.Dec. 240, 51 Ill.App.3d 206, 366 N.E.2d 497 (1977); *Martincich v. City of Hammond,* 419 N.E.2d 240 (Ind.App.1981). Basic due process requirements require that " '... the trier of fact be disinterested * * and that he also be free from any form of bias or predisposition regarding the outcome of the case * * *. Not only must the

employment, if any, when so directed by the department, such claimant shall be denied benefits. . . .

**4.** Note that this issue was raised recently in *Weber v. South Dakota Dept. of Labor, Etc.,* 323 N.W.2d 117 (1982). There, appellant claimed that the hearings examiner was also general counsel for Department and thus the hearing violated due process. This court noted that the hearings examiner "did not appear to act as an advocate for the appellee" (Department), 323 N.W.2d at 120, and further, that appellant had not preserved his record since he did not raise the issue below. Consequently, this court in *Weber* refused to address this issue. In contrast, the present case has a different situation. Here, the hearings examiner (Appeals Referee) clearly acted as an advocate by preparing the case for Department, presenting evidence, and asking questions. He did not take a passive role as prosecutor; he was an advocate while at the same time acting as a judge. Additionally, here, the Zeigs have preserved their record below by objecting to this procedure. Accordingly, while in *Weber* this issue was not before this court, here, this issue is properly before this court.

**5.** SDCL 1–26–26 provides, in pertinent part:

If one or more members of a board or commission or a member or employee of an agency, who is assigned to render a decision in a contested case, took part in an investigation upon which the contested case is based, he shall not participate in the conduct of the hearing nor take part in rendering the decision thereon, but he may appear as a witness and give advice as to procedure.

**6.** SDCL 61–7–6 provides:

The department shall appoint one or more impartial appeals referees to hear and decide disputed claims. No referee shall preside at a hearing in which he has an interest in the outcome thereof.

procedures be fair, "the very appearance of complete fairness" must also be present...." *Wall v. American Optometric Association, Inc.,* 379 F.Supp. 175 (N.D. Ga.1974) quoted in *Mordhorst,* 88 S.D. at 534, 223 N.W.2d at 505.

■ Appeal referee, functioning in the adjudicatory capacity in this hearing, was required to act as a fair, impartial and disinterested decision maker. SDCL 61–7–6. At the same hearing, however, appeal referee also prepared and prosecuted the case for Department. After opening the hearing in the adjudicatory capacity, appeal referee switched to a prosecutorial capacity and presented thirteen exhibits for admission as evidence. Then, appeal referee overruled objections by Zeigs' counsel and admitted the exhibits into evidence. The hearing continued with appeal referee acting as both the adjudicator and the prosecutor.[7] Such actions by appeal referee are clearly inconsistent with the requirement of SDCL 61–7–6 for an impartial appeal referee.

■ The final procedural error of which Zeigs complain was that the appeal was decided on issues neither pleaded nor litigated. The trial court found that there was adequate notice given per SDCL 1–26–17(4), in fact, that there were three separate notices which together should have alerted Zeigs to the issues raised. In the alternative, Zeigs could have applied for more definite and detailed statements. The principal notice to the Zeigs was the determination notice of June 2, 1980, which alleged that they were ineligible to receive benefits because they were members of a corporation and the activity in which they were engaged was potentially profitable and that they were maintaining a contact with that activity.[8] Basic tenets of due process require a claimant to be given notification of the ground on which an appeal referee bases an adverse ruling. 76 Am. Jur.2d *Unemployment Compensation* § 92 (1975). The wildest stretch of imagination could not bring one to read that notice to come within the issues as determined by the appeal referee's decision that is before us on this appeal, to-wit: that Zeigs had failed to qualify because they had not maintained their requisite number of employment contacts per week.

We are therefore of the opinion that the trial court erred in affirming the departmental procedures in two important aspects: first, that the appeal referee, by operating as prosecutor and judge, violated Zeigs' due process, and that such due process was further violated by the inadequacy of the notice. It is noteworthy that the trial court, after affirming the procedural aspects, added a caveat that the procedure was not exemplary.[9]

■ We next examine the issue of whether the decision by the appeal referee was clearly erroneous. SDCL 1–26–36. The trial court, in its memorandum opinion, found that "[g]iving the agency findings great weight, the appeals referee's decision, which was affirmed by the Secretary of the Department of Labor, was not clearly erro-

---

**7.** The questions posed by appeal referee were that of an advocate for Department. For example, according to the record, in examining Jerry Zeig appeal referee inquired, "Now, were you just waiting around sucking up employment, waiting for Myrl and Roy's or were you also looking for work?" When Zeigs' counsel objected to certain questions, appeal referee overruled the objections and continued. At one point, appeal referee stated to Zeigs' counsel, "I don't think I should even allow you to always interrupt in the hearing process here."

**8.** The notice dated June 2, 1980, provided Zeigs with the following notice:

Based on the information submitted the claimant is held ineligible for benefits because he is a member of a corporation and the activity in which he is engaged is potentially profitable and also, he has maintained a connection with that activity. In accordance with Section 61–6–2 of the South Dakota Unemployment Insurance Law the claimant is held ineligible for benefits commencing February 10, 1980, and continuing until availability is established and reapplication is made for benefits.

**9.** The trial court's caveat went on to suggest that the notice should be more detailed and that in the future claimants be furnished with a list of witnesses *not* to be called so that they can subpoena them if they wish to examine them.

neous in light of the entire evidence in the record." We are not bound by the trial court's reading of the record. We can read it for ourselves. In doing so, we disagree with the decision of the trial court and find that the decision of the appeal referee was clearly erroneous in light of the entire evidence on the record.

Appeal referee found that Zeigs did not meet the eligibility requirement of actively seeking work since they did not submit evidence of the minimum two employment contacts per week. However, before denying a claimant benefits, SDCL 61–6–15 requires that Department must direct the claimant to apply for work. We note that appeal referee specifically found that "the [Zeigs] were advised [by Department] that they would *not* be required to make weekly job contacts...." (emphasis added). Further, according to the exhibits, each of the Zeigs returned fourteen weekly claim forms to Department on which they did not list any job contacts and, upon receiving these claim forms, Department neither informed Zeigs to start reporting employment contacts nor refused Zeigs benefits based upon lack of reported employment contacts. Since Department did not direct Zeigs to apply for work, and, in fact, advised and assured Zeigs that they were not required to make or report employment contacts, we hold that Zeigs were never directed to apply for work as required by SDCL 61–6–15 and therefore they are not disqualified from receiving unemployment compensation benefits based upon lack of reported employment contacts.

Appeal referee also held that the evidence was insufficient to establish that Zeigs "would have complied with this work search requirement if they would have, in fact, decided to discontinue efforts in keeping their business operation going." The record supports the fact that Zeigs were wearing two hats, one as corporate officers trying to find work to breathe life into a failing corporation and the other as unemployed truck drivers for whom Corporation had paid unemployment insurance tax. Appeal referee specifically found that if there

had been sufficient snow Corporation could have fulfilled its contract with the City of Sioux Falls for snow hauling. The record reflects that as the winter wore on and it became obvious that Corporation would have no snow hauling work under the contract with the City of Sioux Falls, Zeigs started inquiring as to other jobs for themselves. When the proper season came along, they went to work. That Zeigs were trying to find corporate work or individual jobs should not be held against them after the fact.

In *Red Bird v. Meierhenry,* 314 N.W.2d 95 (S.D.1982), we directed that the unemployment compensation laws should be liberally construed in favor of claimants. Department did not do so in this case. Appeal referee's finding that Zeigs would not have complied with the employment contact requirement is clearly erroneous in light of the record.

We therefore reverse the decision of the trial court to affirm the decision of the Secretary of the Department of Labor affirming the appeals referee, and remand with directions to enter an order reversing the decisions of the agency below.

DUNN and HENDERSON, JJ., concur.

FOSHEIM, C.J., and WOLLMAN, J., dissent.

FOSHEIM, Chief Justice (dissenting).

I dissent. Appellants Jerry and Larry Zeig were business owners and operators. They were not employees within the meaning of the unemployment compensation act. This was the initial issue at the agency level. It remains the central impediment to claimants' qualification for unemployment compensation, a blizzard of procedural error allegations notwithstanding.

An officer of a corporation, as such, is not ineligible for unemployment compensation by virtue of SDCL 61–1–10. By owning 94% of the outstanding shares of J & L Gravel, however, appellants exercised full control of the corporation. They decided when to hire themselves. They decided

when to write the paychecks and when to lay themselves off. They were totally their own employment masters.

The purpose of unemployment compensation is to insure a diligent worker against the vicissitudes of involuntary unemployment. *Ex Parte Alabama Textile Products Corp.*, 242 Ala. 609, 7 So.2d 303, 141 A.L.R. 87 (1942); *California Portland Cement Co. v. Unemployment Ins. Appeals Board*, 178 Cal.App.2d 263, 3 Cal.Rptr. 37 (1960); 76 Am.Jur.2d Unemployment Compensation, § 5 (1975). Unemployment compensation laws were not enacted as a cushion or hedge for corporate business ventures nor were they intended to be a means of compensating business failures. *Steppler v. Com., Unemployment Compensation Board of Review*, 48 Pa.Cmwlth. 54, 408 A.2d 1185 (1979).

Where unemployment compensation claimants are the principal officers and controlling stockholders of their corporate employer, the unemployment insurance agency can lift the corporate veil. It is not required to ignore their true status and accept them as mere employees of the corporate entity. *Hyman v. Unemployment Compensation Board of Review*, 199 Pa.Super. 532, 185 A.2d 821 (1962); *De Priest Unemployment Compensation Case*, 196 Pa. Super. 612, 177 A.2d 20 (1961). Thus in the case of *Mednick v. Unemployment Compensation Bd. of Rev.*, 196 Pa.Super. 73, 173 A.2d 665 (1961), a claimant who was owner of 50% of the stock of a corporation which quit business because of financial difficulties was held not to be an employee entitled to unemployment compensation benefits.

If an unemployment insurance claimant exercises a substantial degree of control over the corporation he should be deemed a businessman and not an employee. *Starinieri v. Unemployment Compensation Board of Review*, 447 Pa. 256, 289 A.2d 726 (1972). Any individual who is an officer and major shareholder of the corporation should be deemed to exercise a substantial degree of control over the corporation and thus be ineligible for unemployment insurance benefits. If the majority position prevails, virtually anyone could enjoy the benefits of government largesse by incorporating a business destined for insolvency or bankruptcy.

Claimants acknowledge in their brief that the disqualifying effect of their ownership of the corporation "[t]hroughout these entire proceedings ... has been the only issue pleaded." The circuit court did not reverse or vacate the agency's resolution of this issue against the claimants. The agency's decision remained intact when the parties, while the first circuit court appeal was pending, stipulated that the matter "be remanded to the ... agency for an additional hearing." Neither the stipulation nor the remand order provided that the second agency decision was to replace or neutralize the first. Actually, the remand order indicated the supplemental nature of the second hearing by providing that the second decision was to be "based upon the evidence and testimony submitted at this [second] hearing." The memorandum decision of the circuit court covers both hearings. The allegations of procedural error did not weaken the force of the initial agency decision, which the circuit court left intact. Hence, the issue from the initial agency decision remains viable and central, and like a jealous mistress, is not lost by neglect. On review of an administrative agency action, it is our province to decide whether the law has been correctly applied. *Matter of Certain Territorial Electric Boundaries (Mitchell Area)*, 281 N.W.2d 65 (S.D.1979). Claimants cannot derive unwarranted benefits via a smokescreen of procedural errors.

I would affirm the agency.

I am hereby authorized to state that Justice WOLLMAN joins in this dissent.