In the Matter of the Appeal from the Final Decision of the South Dakota Department of Labor, Unemployment Insurance Division for La Monte JOHNSON.

No. 13912.

Supreme Court of South Dakota.

Considered on Briefs Feb. 16, 1983.

Decided Aug. 10, 1983.

Joseph G. Rimlinger, East River Legal Services, Sioux Falls, for appellant.

Drew C. Johnson, South Dakota Dept. of Labor, Unemployment Ins. Div., Aberdeen, for appellee South Dakota Unemployment Ins. Div.

MORGAN, Justice.

This is an appeal from the trial court's affirmance of the Secretary of the Department of Labor's (Secretary) final decision denying unemployment benefits to Lamonte Johnson (Claimant), a former employee of Huron Dressed Beef (Employer), Huron, South Dakota. We reverse and remand.

Claimant had been in Employer's employ for about seven months prior to the date of termination. At the time in question, Claimant was on a work-release program from the Beadle County Jail. The record is not clear, but it appears that Claimant's job with Employer was part of the work-release program and that Claimant had never previously worked for Employer. The circumstances and events leading to the termination of the employment relationship will be discussed in detail as appropriate later.

After the termination, Claimant filed a claim for unemployment benefits which was denied by the benefit section of the Department of Labor (Department) on the

grounds that his separation was a voluntary quit. This determination was appealed by Claimant, which appeal was heard by an appeal referee for Department. The decision of the appeal referee was to reverse the determination of the benefit section, holding that the separation from employment was a discharge by Employer for reasons other than work-connected misconduct. Employer, in turn, appealed to Secretary, who reviewed the record and reversed the appeal referee's decision, concluding that Claimant had voluntarily quit his employment without good cause, and from which decision the appeal to the trial court and ultimately to this court arose.

There are two issues framed by Claimant's brief. In essence, the first is whether the separation was a voluntary quit on the part of Claimant as found by Secretary or a discharge without good cause by Employer as found by the appeal referee. The second issue we will address is whether the court should consider a conflict in findings when an agency overrules its hearing examiner. Department protests that this issue was not raised in the trial court and thus was not preserved for appeal and, furthermore, that it is a constitutional attack on Department's appeal procedure. Because we do not consider it a constitutional attack, and because it goes to the very heart of this court's review of the first issue, we deem it both necessary and expedient at this time to elucidate on a distinction between departmental appeals and judicial appeals.

Basically, the unemployment insurance claims procedure is found in SDCL ch. 61–7 and Administrative Rules of South Dakota (ARSD) art. 47:06. Upon filing of an unemployment insurance claim, the benefit section of Department examines the claim and determines its validity and amounts payable, if any. The benefit section may refer it to an appeal referee or to Secretary. SDCL 61–7–2. The initial determination by the benefit section is final unless appealed. SDCL 61–7–5. If a claim is disputed, Department shall appoint one or more impartial appeal referees to hear and decide the claim. SDCL 61–7–6. Upon completion of the hearing, appeal referee shall within ten days announce findings of fact and the decision. ARSD 47:06:05:08. Any interested party or the benefit section, dissatisfied with the decision of the appeal referee, may appeal to Secretary in writing. ARSD 47:06:05:10.

On appeal, "The secretary may on his own motion affirm, modify, or set aside any decision of an appeal referee on the basis of the evidence previously submitted in such case, or direct the taking of additional evidence . . . ." SDCL 61–7–12. Within thirty days after hearing an appeal Secretary will announce the findings of fact and decision with respect thereto. ARSD 47:06:05:20.

The final decision of Secretary is appealable as provided in SDCL ch. 1–26. SDCL 61–7–2. Upon application and satisfactory showing the trial court may order that the agency take additional evidence. SDCL 1–26–34. When reviewing the agency findings, SDCL 1–26–36 provides:

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

. . . .

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Either the agency or an aggrieved party may obtain review of the circuit court's judgment by appealing to the Supreme Court. SDCL 1–26–37.

There appears to be a striking contrast between our standard of reviewing an agency decision and Secretary's standard for reviewing an appeal referee's decision. The court must give "great weight" to an agency's findings, SDCL 1–26–36, while Secretary may "on his own motion affirm,

modify, or set aside any decision of an appeal referee ...." SDCL 61–7–12. Secretary, however, does not have unbridled discretion. Appeal referee's decision is part of the record and the record must be considered *as a whole* to see whether the result comports with the judicial standard of review upon appeal.

In accord, the Administrative Procedure Act as enacted by Congress provides at 5 U.S.C. § 557(c)(3)(A): "*All decisions,* including initial, recommended, and tentative decisions, *are a part of the record ....*" (Emphasis added.) That section continues by requiring that all decisions "include a statement of___(A) findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record ...." *Id.* In discussing this provision, in *People of State of Illinois v. United States,* 371 F.Supp. 1136 (N.D.Ill.1973), the court stated:

> The Congressional policy in setting forth the requirements of 5 U.S.C. § 557(c)(3)(A) that findings be set forth would seem at least fourfold: (1) to prevent arbitrary and capricious decisions in a manner violative of due process, (2) as an explanation to the parties involved as to the basis for the decision, (3) to give guidance to parties similarly situated, and (4) to provide a basis for judicial review by the courts.

371 F.Supp. at 1138. Department's rules similarly require Secretary to set forth the findings and the decision with "*the reasons therefor.*" ARSD 47:06:05:20 (emphasis supplied).[1]

■ A mere conclusory statement without any justification will not satisfy the Administrative Procedure Act (APA) requirement. As stated by one court, the justification for a decision is necessary since [t]o permit the [agency] to announce its decisions without setting forth the justifications in the findings and conclusions would be tantamount to vesting in it absolute discretion by removing from the courts the only tools they possess which enable them to exercise their limited function of review.

*International U., United Auto., & A.I. Wkrs. v. N.L.R.B.,* 455 F.2d 1357, 1369–70 (D.C.Cir.1971). Since Department's own rules require Secretary to state the reason for a decision and since Secretary must consider appeal referee's decision as part of the record, Secretary's departures from the appeal referee's findings are vulnerable if they fail to reflect attentive consideration to the examiner's decision. *See Greater Boston Television Corporation v. F.C.C.,* 444 F.2d 841 (D.C.Cir.1970).

■ We now examine the propriety of the trial court's judgment affirming Secretary on the issue of whether or not Claimant had voluntarily quit his employment. In reviewing the trial court's judgment under the Administrative Procedure Act, SDCL ch. 1–26, the reviewing court must make the same review of the administrative tribunal's action as does the trial court. Further, we make our decision as to whether the administrative decision can be sustained, unaided by a presumption that the trial court's decision is correct.[2] *Weltz v. Bd. of Educ. of Scotland Sch. Dist.,* 329 N.W.2d 131 (S.D.1983). As previously indicated, our standard of review is whether the decision of Secretary was clearly erroneous in light of the entire evidence in the record, or whether the action of Secretary was arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. SDCL 1–26–36(5), (6). As this court said in *Estate of Hobelsberger,* 85 S.D. 282, 289, 181 N.W.2d 455, 459 (1970):

---

1. ARSD 47:06:05:20 provides, in pertinent part: The director shall, within thirty days after hearing an appeal announce his findings of fact and decision with respect thereto. The decision shall set forth the findings of the director with respect to the matters before him, his decision and the reasons therefor.

2. Because this case was appealed and argued prior to July 1, 1983, we do not address the revision to SDCL 1–26–36 by the 1983 Legislative Session. *See* 1983 S.D.Sess.L. ch. 6, § 1.

In applying the clearly erroneous standard we must bear in mind that our function is not to decide factual issues de novo. The question for the appellate court is not whether it would have made the same findings the trial court did, but whether on the entire evidence it is left with a definite and firm conviction that a mistake has been committed.

■ We are also mindful that in an unemployment compensation case the employer has the burden of proving that an employee is not eligible. 81 C.J.S. *Social Security* § 275 (1977); *Lopez v. Owatonna Mfg. Co.,* 304 N.W.2d 647 (Minn.1981); *Marz v. Department of Employment Services,* 256 N.W.2d 287 (Minn.1977). Unemployment compensation statutes should be liberally construed in favor of the claimant. *Red Bird v. Meierhenry,* 314 N.W.2d 95 (S.D.1982).

At the time the present action arose, SDCL 61–6–13 provided, in pertinent part, that: "An unemployed individual who has left his most recent employment . . . voluntarily without good cause shall be denied benefits . . . ."[3] Secretary reversed the appeal referee's decision and held that Claimant voluntarily quit his employment and that he had not shown good cause for having done so. We examine the record to determine whether or not that holding was clearly erroneous or arbitrary or capricious or characterized by abuse of discretion.

The undisputed facts found by both the appeal referee and Secretary were that Claimant was employed by Employer from March 1980 to October 16, 1980, and that his job assignment was that of washing slaughtered heads. Claimant worked from 6 a.m. to 4:30 p.m. and at the time of termination was receiving $6.50 per hour. Claimant's supervisors were Steven Carstens (Carstens), assistant foreman, and Don Harder (Harder), foreman. Further, both the appeal referee and Secretary agree that Claimant was struck by a swinging beef while working on the floor on October 15, 1980, and Claimant requested to see the company nurse. Upon seeing the nurse,

Claimant was sent to the company doctor. The following morning Claimant returned to work. Appeal referee found that Claimant was given a light-duty slip by the doctor directed to the foreman of Claimant's department for light duty for two days. A later medical statement of ability to work signed by the doctor stated the nature of the illness or injury as "acute strain of right shoulder." Secretary found that the doctor's statement stated that Claimant could return to regular work and instructed Claimant to avoid heavy lifting with right arm if possible. Secretary also found that upon Claimant's return to work, he was assigned to light duty.

Appeal referee stated that at approximately 9 a.m. Claimant realized that he was falling behind, as his shoulder was bothering him. At a break time, approximately two and one-half hours later, Claimant told Carstens that he did not know if he could continue. Claimant felt he might have to leave because of the pain in his shoulder. At this time Carstens told Claimant, "if you have to leave, notify me." Appeal referee further found that Claimant decided he was in too much pain to work and notified Carstens of his leaving and returned to the Correction Center. Carstens stated that Claimant did notify him that he was leaving, that he had requested that Claimant notify Harder, and that to his knowledge Claimant had done so. Secretary on the other hand, while acknowledging that Claimant had told his "Supervisor" that he did not know if he would be able to continue work, found that Claimant had not told the "Supervisor" that he could not continue work because of pain. Secretary then produced from the record that Claimant had complained to fellow workers that he "was not going to put up with the guff around the place" and that he had so commented to other fellow employees on prior occasions. Further, Secretary found that Claimant had complained that he was not making enough money around the place and had so complained on prior occasions. Secretary found that Claimant did notify the supervisor that

---

**3.** Subsequently, SDCL 61–6–13 was amended by 1982 S.D.Sess.L. ch. 369, § 11.

he was "punched out" and was going back to the Correction Center.

Appeal referee's conclusion was that Claimant had not voluntarily quit his employment but was discharged by the company. Appeal referee found the testimony of Claimant and Employer to be in reasonable agreement as to what happened at the time of Claimant's departure. Appeal referee found Claimant had told his immediate supervisor that his shoulder was bothering him, that he was in pain and he might not be able to work after break time, and, further, that after Claimant had decided to leave due to the pain he had contacted his supervisor (Carstens) who sent him to see Harder to tell him he was leaving the plant due to the pain in his shoulder. Appeal referee concluded that Claimant had followed instructions and that there was no showing that Claimant had deliberately walked off the floor with no reason but that he had left because of pain from an injury on the prior day.

■ In our opinion, based on the entire record, the decision of Secretary was clearly erroneous. It is undisputed that Claimant was injured on the day prior to the alleged quitting. It is undisputed that he had a doctor's slip at least suggesting some form of light duty. Secretary ignored this evidence in arriving at her decision and dredges up some complaints by Claimant about putting up with guff and insufficient pay, all of which Secretary admits had been made to fellow employees on *prior* occasions. On the basis of these complaints, which are typical of many employees, Secretary concluded that Claimant did not leave the employment primarily because of pain or any injury but because he was dissatisfied by the fact that he was not making sufficient money; he thought he was being picked on by fellow employees. These complaints, which Secretary stresses, were testified to by Jim Sheridan, Deputy Sheriff (Sheridan), as a "type regularly heard from prisoners on work leave from the jail and were not peculiar to claimant." Of such complaining, Sheridan further stated, "I hear it all the time and I believe the employer will probably hear it too." For Secretary to rely on such typical grousing to overrule the appeal referee in the face of the absolute evidence that Claimant had sustained some injury, was not only clearly erroneous but approaches being arbitrary or capricious. Certainly, Secretary's departure from appeal referee's finding failed to reflect attentive consideration to the appeal referee's decision.

■ Assuming, merely for the sake of discussion at this point, that Secretary's findings regarding the reason for Claimant's leaving work that day were correct, we still have the issue before us whether it constituted quitting. It is undisputed that after Claimant's departure, personnel of Employer informed the deputy sheriff at the Correction Center "that the Claimant had voluntarily left his employment and that *as far as they were concerned* he had quit." (Emphasis added.) Appeal referee noted that the sheriff had called and talked to someone at Employer, who confirmed that Claimant had left the job and "as far as they were concerned" he had quit. It is noteworthy that Secretary did not find as a fact that Claimant told his supervisor or anyone else at the plant that he had "quit." To establish a voluntary quit requires that an employee *intend* to terminate employment. *Powers v. Chizek,* 204 Neb. 759, 285 N.W.2d 501 (1979); *Allen v. Core Target City Y. Prog.,* 275 Md. 69, 338 A.2d 237 (1975); *Savastano v. Board of Review, Div. of Emp. Sec.,* 99 N.J.Super. 397, 240 A.2d 172 (1968); *Vergeyle v. Employment Sec. Dept.,* 28 Wash.App. 399, 623 P.2d 736 (1981). Additionally, even if Claimant had left work without properly checking out with his supervisors, which was not the case here, that alone does not establish that he voluntarily quit without good cause.

■ The general rule is that "[a]bsence from the job is not a leaving of work where the worker intends merely a temporary interruption in the employment and not a severance of the employment relation." *Inter-Island Resorts, Ltd. v. Akahane,* 46 Haw. 140, 377 P.2d 715, 725 (1962). Here, the record reflects that after

first learning Employer said Claimant had quit, Claimant called Employer four times to explain that he had not quit but rather had left due to pain in his shoulders. Even under Secretary's findings, it is apparent that Claimant had not intended to sever the employer-employee relationship, but rather merely to take a temporary leave from work. In view of the admonition of *Red Bird, supra,* that unemployment compensation statutes should be liberally construed in favor of Claimant, we conclude that under the posture of this case Secretary's determination that the departure of Claimant from the plant amounted to a voluntary quit is erroneous in light of the evidence in the record before us.

We reverse the judgment and remand the case to the circuit court with directions that Secretary's decision be reversed and the decision of appeal referee be reinstated.

All the Justices concur.